RENDERED: DECEMBER 17, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1369-MR

SABRINA SMITH (NOW PREM)  APPELLANT

v.  APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE M. BRENT HALL, JUDGE
ACTION NO. 14-CI-00304

JEREMY SMITH  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

CALDWELL, JUDGE: Sabrina Prem (formerly known as Sabrina Smith and hereinafter "Prem") appeals from one or more decisions of the Hardin Family Court based on its alleged failure to issue required findings of fact and conclusions of law. For the reasons stated herein, we affirm.

## FACTUAL BACKGROUND

Prem and Jeremy Smith ("Smith") were married in 1998 and divorced in 2014. They have a minor child, born in 2007. Prem and Smith share joint custody of the child. In 2018, Prem filed a motion seeking the family court's approval for her to relocate to Texas with the minor child. Prem's new husband wished to move to Texas to help out his elderly, ill father.

At a hearing on Prem's initial relocation motion, the family court judge inquired whether Prem intended to move to Texas if the family court denied her motion to relocate with the child. Prem indicated that she would not relocate without the child. The family court denied this first relocation motion. Prem remained in Kentucky with the child for about a year while her new husband moved to Texas.

In July 2019, Prem moved to Texas to live with her husband. The child remained in Kentucky and was primarily in Smith's care. In September 2019, Prem filed a motion with the family court to modify timesharing so that the child could live with her in Texas.

Following an evidentiary hearing, the family court entered an opinion and order in early March 2020 denying Prem's motion to modify timesharing to allow the child to live with her. It ordered that Prem could have parenting time

under the schedule provided in local timesharing guidelines and was responsible for transportation costs for her parenting time since she voluntarily relocated.

Prem filed a motion for relief under Kentucky Rules of Civil Procedure ("CR") 52. Specifically, she requested, pursuant to CR 52.02, factual findings on why the family court found the parenting time schedule in local rules in the child's best interest. And she also generally requested that the family court amend its order to comply with "formatting mandates of CR 52.01." (Record "R.," p. 360.) Around this same time, Smith also filed a motion requesting that Prem be ordered to pay child support and to pay for one-half of the child's private school costs.

Following some pandemic-related delay, the family court evidently heard Prem's CR 52 motion and Smith's motion for child support and reimbursement for half the child's private school costs in the summer of 2020.[1] On July 17, 2020, the family court issued an order granting Smith's motion. In this same order, the family court reiterated its denial of Prem's relocation motion, its

---

[1] Neither transcripts nor video recordings of any hearings in this case from the summer of 2020 were provided to this Court for our review. Instead, the only DVDs of proceedings in this case in the record on appeal are from August 2018 and February 2020. Although this Court granted Prem's motion to supplement the record with video recordings from two specified dates during the summer of 2020, the Hardin Circuit Court Clerk sent a letter to this Court indicating it had no recordings in this case from those specified dates and the clerk did not send any more video recordings to this Court. Neither party cited to or discussed any video recordings or transcripts of proceedings in this case in their respective briefs nor did they address the lack of further recordings submitted by the circuit court clerk following our granting the motion to supplement the record.

-3-

award of parenting time under local guidelines and its holding that Prem must pay all transportation costs to exercise her parenting times since she had voluntarily moved to Texas. However, this July 2020 order did not rule on Prem's CR 52 motion or contain findings of fact or conclusions of law.

Prem then filed another motion seeking CR 52 relief. She specifically sought, under CR 52.02, findings of fact on income and health care expenses used in calculating child support. And she again sought findings of fact on why the family court adopted the parenting time schedule in Hardin County local rules. Also, she requested that the family court "conform its order to the formatting requirements of CR 52.01." (R., p. 400.)

The family court then entered an "Opinion and Order" in September 2020. While this order did not explicitly grant or deny the requested CR 52 relief, it did contain discussion of the family court's observations and reasoning on various matters. Though styled as an opinion and order, the family court did not actually order anything, but it did set forth findings of fact and conclusions of law, even though they were not specifically denominated as such. Prem then filed a timely appeal. Further facts will be provided as needed.

## Identification of Issues on Appeal

In the introduction to her appellant's brief, Prem states that she: "seeks an opinion and order vacating trial court's orders denying relocation,

-4-

changing primary residential custody, automatically using a local rule parenting schedule, allocating child travel costs by local rule, calculating child support, and requiring payment of private school tuition." (Page i of Appellant's brief.) Despite this indication that she seeks for this Court to vacate plural orders, her notice of appeal states that she appeals from only one trial court decision–its opinion and order entered September 30, 2020. Her appellate brief states that she appeals from the family court's July 17, 2020 order as amended by its September 30, 2020 opinion and order. (Page 1 of Appellant's brief.)

Although the introduction to Prem's brief may suggest that she ultimately seeks broader and more substantive relief, the issues she asserts in the argument portion of her brief focus on procedural matters. Specifically, she argues that the family court failed to comply with CR 52.01 requirements and to make findings of fact about whether the parenting time schedule suggested in local rules was in the child's best interest. And she does not discuss the actual merits of such decisions as denying her motion for relocation or determining the amount of child support. So, we do not review the merits of the family court's rulings on such matters as custody, timesharing, and child support for error.

Instead, we consider only whether the family court complied with its duties under CR 52 and caselaw construing CR 52. In so doing, we do not confine our examination to the family court's July 17, 2020 order and its September 30,

2020 opinion and order. Instead, we also examine the family court's opinion and order entered March 4, 2020 in which it denied relocation, adopted the timesharing schedule in local rules, and allocated all transportation costs for exercising Prem's parental time to her as well as granting Smith's motion to terminate his prior child support obligation.

## STANDARD OF REVIEW

Reviewing a trial court's denial of a request for additional findings of fact under CR 52.02, we held that the question of whether the trial court omitted a finding on a matter essential to a judgment is a matter of law. *McKinney v. McKinney*, 257 S.W.3d 130, 133-34 (Ky. App. 2008). Rulings on questions of law are reviewed *de novo* on appeal. *Davis v. Fischer Single Family Homes*, 231 S.W.3d 767, 779 (Ky. App. 2007). In other words, the Court of Appeals need not defer to a trial court's conclusion that its findings were sufficient when the trial court was presented with a motion for additional findings under CR 52.02. *McKinney*, 257 S.W.3d at 134. Although there appears to be no specific controlling authority about the standard of review for a trial court's ruling on a more general request for it to comply with the requirements of CR 52.01, questions concerning the application of CR 52.01 similarly appear to be questions of law subject to a *de novo* standard of review.

-6-

**Applicable Law About Duty of Trial Court to Make Findings under CR 52[2]**

CR 52.01 states: "In all actions tried upon the facts without a jury . . ., the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment . . . ." CR 52.01 further provides: "Requests for findings are not necessary for purposes of review except as provided in Rule 52.04." And CR 52.01 also states:

> If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41.02.

CR 52.02 provides that a party may file a motion within ten days of entry of judgment requesting amended and/or additional findings and that the trial court "may amend its findings or make additional findings and may amend the judgment accordingly."

CR 52.04 states:

> A final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a

---

[2] CR 52 presently consists of four parts: CR 52.01, CR 52.02, CR 52.03 and CR 52.04. We do not discuss herein CR 52.03–which concerns challenges to the sufficiency of the evidence to support findings of fact–since no issues about the sufficiency of evidence to support factual findings have been raised in this appeal.

written request for a finding on that issue or by a motion pursuant to Rule 52.02.

The Kentucky Supreme Court provided guidance on the application of these potentially inconsistent provisions in CR 52 in *Anderson v. Johnson*, 350 S.W.3d 453 (Ky. 2011). *Anderson v. Johnson* also involved a family court's resolution of a motion to modify parental timesharing so that a parent could relocate with a minor child. *See id*. at 454. Prem even characterizes her appeal as "a classic *Anderson v. Johnson*, CR 52.01 appeal." (Page ii of Appellant's brief) (footnote omitted).

The Kentucky Supreme Court noted CR 52.01's statement that it applies to all actions tried on the facts without a jury and its seemingly possibly contradictory statement that it did not apply to resolution of many motions with certain exceptions. The Court read CR 52.01 to apply to resolutions of motions to modify timesharing to permit relocation. *Anderson*, 350 S.W.3d at 456-57. And it succinctly stated that in ruling on such motions to modify timesharing, "family courts **must make findings of fact and conclusions of law**, and must enter the appropriate order of judgment when hearing modification motions." *Id*. at 457 (emphasis added).

The Kentucky Supreme Court construed CR 52 to impose duties on both trial courts and litigants. It considered the trial court–here the family court–to have a mandatory duty under CR 52.01 to issue findings of fact and conclusions of

law in this type of case.  And it held that if the trial court fails to make any factual findings at all, an appellate court may reverse or remand for such findings even if the complaining litigant has not requested further findings from the trial court. *Anderson*, 350 S.W.3d at 458.

But where the trial court has at least issued some findings of fact yet has failed to make findings on matters essential to the judgment, our Supreme Court held that a litigant must make a written request for further findings on that specific matter under CR 52.04.  It held that CR 52.04 only barred "reversal or remand 'because of the failure of the trial court to make a finding of fact on *an issue* essential to the judgment' when a litigant fails to bring it to the court's attention by a written request for a finding."  *Anderson*, 350 S.W.3d at 458.

Before addressing whether the family court here properly resolved matters in light of CR 52 as construed by *Anderson v. Johnson*, we note that the family court did not expressly rule upon Prem's CR 52 requests in its July 17, 2020 order nor in its September 30, 2020 opinion and order.[3]  And unfortunately, we do

---

[3] In addition to the lack of express ruling on the CR 52 requests, there were no recitations about whether these orders were final and appealable and/or there being no just reason for delay. Especially given the plethora of post-dissolution motions filed with the family court (including disputes over retirement accounts and other matters), one might reasonably wonder whether Prem's appeal ought to be dismissed as not from a final and appealable order or judgment. *See generally* CR 54.01; CR 54.02.  But the Kentucky Supreme Court has indicated that orders modifying final orders on matters such as parental timesharing are final and appealable orders. *Anderson v.* , 350 S.W.3d at 455-56.  And, as we construe the family court's September 2020 opinion and order as implicitly granting in part and denying in part Prem's CR 52 motions, we will assume Prem's appeal is from a final and appealable order in this case.

not have video recordings of the hearings held in the summer of 2020 to review to see if the family court expressly orally ruled on Prem's CR 52 motion therein. Obviously, if the family court had not ruled on the motion for CR 52 motion at all, there would be no ruling on this matter for us to review. But we construe the family court's written September 30 opinion and order as implicitly granting, at least in part, Prem's motion for CR 52 relief–especially the general request for the family court to comply with CR 52.01 but also requests for further findings under CR 52.02–by offering further written explanation of its resolution of the various issues before it at that time. We also construe the September 2020 opinion and order as implicitly denying in part some requests–perhaps reflecting a view that further findings were not necessary.[4]

Despite Prem's CR 52 requests and the mandates in *Anderson v. Johnson*, the family court did not issue formal, specifically denominated findings of fact and conclusions of law in its opinions and/or orders of March, July, and September 2020. This is perplexing as formal findings of fact and conclusions of

---

[4] Again, we are somewhat hampered by not being able to review what the family court judge may have orally stated at hearings on these matters. Perhaps, for example, the family court judge may have orally stated that he believed sufficient findings had been provided in earlier orders– including the early March 2020 order–on some issues and denied further findings on these specific matters. Given the appellant's responsibility to make sure that the record on appeal is complete, we may presume that items missing from the record (including video recordings of proceedings) would support the family court's decision. *Smith v. Smith*, 450 S.W.3d 729, 731-32 (Ky. App. 2014).

law allow for more meaningful appellate review and often prevent the need to vacate and remand for further proceedings.

Nonetheless, despite the lack of optimal presentation, we believe that the family court's written discussion of the issues before it in its 2020 orders substantially complied with its duties under CR 52. While we do not endorse the lack of formal findings of fact or conclusions of law, the family court's written opinions and/or orders explained what it perceived the facts to be and explained its legal reasoning for resolving the matters.

Amongst its discussion of other issues, the family court noted that Prem had requested more findings of fact about its decision to use the parenting time schedule in local rules and more findings of fact about income and health care expenses used to calculate child support in its September 2020 opinion and order.

**Findings of Fact and Conclusions of Law on Relocation in March 2020 Order**

Other than noting that relocation of the child was "hotly litigated" along with other issues, (R., p. 402), the family court did not discuss its decision not to permit the child's relocation in its September 2020 opinion and order. And it simply stated that Prem's motion for the child's relocation was denied in its July 2020 order. Although there were no factual findings about relocation in these later court documents, the family court made detailed findings of fact explaining why it did not find it in the child's best interest to relocate in its March 2020 opinion and

-11-

order.[5]  Further, Prem admits in her reply brief that the March 2020 opinion and order contains findings concerning her request for relocation.

In short, there appears to be no dispute that the family court issued findings of fact on the relocation issue.  And though it did not explicitly discuss legal authority, it determined relocation was not in the child's best interest–thus, effectively, though informally, issuing a conclusion of law.  *See Anderson*, 350 S.W.3d at 458-59 (noting that family court determined that move was not in the child's best interest, "which is the conclusion of law required by KRS [Kentucky Revised Statutes] 403.320.").[6]  Thus, the family court was not required to make further findings or conclusions of law on this issue–despite Prem's general request that it conform its opinions to comply with the formatting mandates of CR 52.01.[7]

---

[5] We note that although Prem indicates she wishes for this court to vacate orders including those "denying relocation" and "changing primary residential custody" in her brief, she does not indicate in her brief where any order explicitly changing primary residential custody may be found in the record.  Perhaps the family court's recent orders denying her requests to relocate the child may be construed as effectively resulting in the child residing primarily with Smith, but any earlier orders changing primary residential custody are certainly long past the time deadline to appeal.  *See generally* CR 73.02.

[6] We express no opinion on whether the best interest standard was the relevant standard for determining the relocation issue here, rather we simply note that the family court's determination that relocation was not in the child's best interest was effectively a conclusion of law.  The briefs do not discuss whether the matter should have been decided under a different standard.

[7] Prem did not specifically request, pursuant to CR 52.02, that the family court issue findings of fact on the relocation issue in her written motions for CR 52 relief.  A vague request for a court to "conform" its decision to comply with CR 52 is, generally, insufficiently specific to inform the family court as to *exactly* what additional findings of fact a party believes are necessary.

So, the family court's denial of the motion to relocate cannot be vacated for failure to issue findings on this matter or for failure to otherwise comply with CR 52.

## Findings on Use of Parenting Schedule Guidelines in Local Rules

The family court stated in its September 2020 opinion that local rules set out a schedule for parenting time where one parent lived more than one county away and that these local rules had been approved by the Kentucky Supreme Court. And it found that it would be reasonable to use the parenting time schedule suggested in local rules under the circumstances.

Prem correctly points out in her brief's authority that a family court should not simply impose the parenting time schedule suggested in guidelines to local rules without further consideration of the facts of the case and the best interest of the child. *See Drury v. Drury*, 32 S.W.3d 521, 524-25 (Ky. App. 2000) (indicating that family courts should not put undue weight on any sort of standardized order or schedule for parenting time or visitation;[8] instead, family

---

[8] Often, the terms *parenting time*, *timesharing*, and *visitation* are used interchangeably. However, at least some authority suggests it is more correct to use the term *timesharing* to refer to a joint custodian's time with the child and *visitation* to refer to a non-custodial parent's time with the child when the other parent has sole custody. *See Pennington v. Marcum*, 266 S.W.3d 759, 764-65 (Ky. 2008) (noting that a parent having joint legal custody of a child who does not primarily reside with that parent is often incorrectly referred to as having visitation, rather than timesharing with the child). Although the *Drury* case discusses how determining what is reasonable visitation depends on the facts of the individual case, much of its discussion concerns parents with joint custody for whom *Pennington* suggests the terms *parenting time* or *timesharing* might be more appropriate:

> What constitutes "reasonable visitation" is a matter which must be decided based upon the circumstances of each parent and the

-13-

courts must determine what is reasonable for that family and should not use standard orders or schedules in lieu of making findings of fact); Family Court Rules of Procedure and Practice ("FCRPP") 1(7) (state family court rules prevail over conflicting local rules); FRCPP 8 (parenting time orders must be based on the child's best interest; parenting time guidelines in state family court rules or local rules or set forth by parties' agreement may be considered). *See also* Time-Sharing/Visitation Guidelines for the 9th Judicial Circuit Hardin Family Court (attached as Appendix Exhibit 5 to appellant's brief and stating: "The following schedules are suggested as **guidelines** for the parents and the Court in establishing time-sharing/visitation schedules. Each case will present unique facts or circumstances which shall be considered by the court in establishing a time-sharing/visitation schedule and **the final schedule established by the court or agreed to by the parents may or may not be what these guidelines suggest**.").

---

children, rather than any set formula. When the trial court decides to award joint custody, an individualized determination of reasonable visitation is even more important. A joint custody award envisions shared decision-making and extensive parental involvement in the child's upbringing, and in general serves the child's best interest. Thus, both parents are considered to be the "custodial" parent, although the trial court may designate where the child shall usually reside. The "residential" parent does not have superior authority to determine how the child will be raised, and major decisions concerning the child's upbringing must be made by both parents. A visitation schedule should be crafted to allow both parents as much involvement in their children's lives as is possible under the circumstances.

*Drury*, 32 S.W.3d at 524 (citations omitted).

Here, although the family court's findings about the use of the parenting time guidelines are sparse and although our Supreme Court's approval of local rules should not be mistaken as blanket approval for automatically or always using the schedules suggested in such local guidelines, the family court did determine that using the suggested schedule in local rules was reasonable under the circumstances. Though the family court may have erred in not specifically setting forth any findings of fact supporting its determination that using the local guidelines' schedule was reasonable here under a *de novo* standard of review, any error in this regard was harmless based on our review of the record. *See* CR 61.01 (no error in a ruling or order is a ground for vacating or otherwise disturbing an order or judgment "unless refusal to take such action appears to the court inconsistent with substantial justice" and courts "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

Though perhaps the family court could have done a better job of explicitly providing requested factual findings in response to Prem's specific request for findings on this particular issue under CR 52.02, the family court still at least recognized that the parties did not live in adjacent counties and it concluded that applying the schedule suggested in local guidelines was reasonable under the

circumstances.[9] And though it failed to explicitly discuss further facts in its orders concerning use of this schedule in its July and September 2020 orders/opinions, the family court noted that Prem had moved to Texas in its September 2020 opinion. Though not explicitly discussed in the family court's written findings, Texas is obviously a significant distance from Kentucky so that people of ordinary means often cannot afford the time or money to travel such distances frequently. *See Pennington,* 266 S.W.3d at 770 (indicating family court resolving timesharing matters between joint custodians should consider both distance between the parties and their financial means). *See also N.B. v. C.H*., 351 S.W.3d 214, 222 (Ky. App. 2011) ("the greater the distance between the parents' respective residences, the greater the resources necessary to comply with the existing order" on parental timesharing).

The essence of the dispute between the parties regarding timesharing appeared to be whether the child would live primarily with the mother in Texas or with the father in Kentucky–not the specifics of timesharing if Prem's relocation request was denied. Though Prem unsuccessfully sought to modify timesharing so that the child could live primarily with her in Texas, Prem did not request any

---

[9] In concluding that application of the schedule suggested in local guidelines was reasonable under the circumstances, we believe that the family court effectively indicated its basis for the decision and rendered an informal conclusion of law. Whether or not the family court explicitly cited the correct legal standard in this conclusion of law, the family court had elsewhere applied the best interest standard to determining the more general, salient question of whether the parties' timesharing should be modified to permit the child's relocation to Texas with Prem.

specific arrangement different from the guidelines in the local rules if her request for the child's relocation was denied based on our review of the record. For example, she apparently did not suggest that holidays be split differently or that the child spend a greater share of summer vacation with her than that suggested in the local guidelines. We cannot conclude the family court erred by not making additional findings explaining its application of suggested schedules regarding timesharing in local rules when Prem has not shown that she asked for a different arrangement than that suggested in local rules in the event her motion to relocate with the Child were denied.

Though ideally the family court would make more specific factual findings on such timesharing matters in the future particularly in response to a party's request for more findings on this issue under CR 52.02, its failure to make more specific factual findings or to explicitly determine whether the visitation schedule was in the child's best interest was harmless error under the facts here. Should the application of the local scheduling guidelines prove unworkable in terms of time or expense or other matters in the future, both parties are presumably free to pursue further modification of parental timesharing upon properly supported motions.

**Findings on Allocation of Transportation Costs**

In its September 2020 order, the family court stated that since Prem had previously testified that she would not relocate to Texas in earlier proceedings but then later moved to Texas "contrary to her testimony" that it "allocated the cost of transportation to her based on her voluntary move." (R., p. 403.) This brief explanation sets forth the family court's view of the facts and its legal reasoning–albeit with no cited legal authority–on this matter. (Though not discussed by the family court in its orders, this explanation was consistent with guidelines in the local rules suggesting that the parent with whom the child did not primarily reside would pay transportation costs for parenting time.) Though terse, the family court effectively issued findings and conclusions and its decision to hold Prem responsible for the costs of exercising her parental time cannot be vacated on the basis of failure to issue findings or conclusions under CR 52.

**Findings on Income, Private School Tuition and Health Care
for Child Support Purposes**

Pursuant to CR 52.02, Prem asked for findings on income and health care expenses for calculating her child support obligation in her July 2020 motion. But she does not specifically argue in her brief that the family court erred in its resolution of her CR 52.02 request for specific findings on this particular issue. Prem does indicate in the introduction to her brief, however, that she seeks to

vacate the family court's orders calculating child support[10] and requiring payment

of private school tuition. To the extent that Prem seeks to vacate the family court's

handling of her CR 52.02 request for specific findings on income and health care

used in calculating child support, this issue is waived by her failure to argue this

particular issue in her appellate briefs. *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d

803, 815 (Ky. 2004); *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979).

Furthermore, the family court's September 2020 opinion clearly

contains findings about the parties' respective incomes and an explanation of how

---

[10] Sometimes it is difficult to discern exactly what Prem is appealing from in her brief. To the extent that she is also appealing from, or seeking to vacate, the family court's termination of Smith's prior obligation to pay child support to her also ordered in its March 2020 decision, we note that Prem generally requested that the family court comply with CR 52.01 but did not request specific findings on its decision to terminate Smith's child support obligation in her initial CR 52 motion filed in March 2020–despite specifically requesting findings of fact under CR 52.02 on the separate issue of the decision to use the parenting time schedule suggested in local rues. The family court issued some findings of fact in its March 2020 opinion and order concerning denial of relocation, although it did not make findings supporting or explicitly explaining its decision to terminate Smith's child support obligation therein other than noting that the child was primarily in Smith's care after Prem moved to Texas. Prem did not specifically request findings on the decision to terminate Smith's child support obligation in either her March 2020 CR 52 motion nor her July 2020 CR 52 motion, although she did generally request that the family court comply with the requirements of CR 52.01–meaning, we believe that it formally issue findings of fact, conclusions of law and judgment. *See* CR 52.01 (requiring that courts deciding actions on the facts without a jury "find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.]"). At least arguably, Prem's failure to specifically request findings of fact on the family court's decision to terminate Smith's child support obligation may mean that she has waived any issue on the family court's failure to make findings about terminating Smith's child support. *See Anderson*, 350 S.W.3d at 458 (discussing how a litigant is not required to do anything to preserve issue if trial court totally fails to issue findings of fact but indicating that if the trial court makes some findings but omits others, the trial court's decision cannot be vacated unless the litigant has specifically requested findings on that particular factual issue). In any event, the family court's termination of Smith's child support obligation in March 2020 seems premised on its finding that the child was primarily residing with Smith after Prem moved to Texas in July 2019.

it calculated Prem's child support obligation. It also contains a discussion of how the family court discounted Prem's testimony as not credible and her documentation as hearsay which it rejected given its assessment of her credibility. And it stated that if Smith wished to modify her child support obligation, "she should set this matter for a hearing and give testimony and provide certified records to support her position." (R., p. 404.)

Regarding private school tuition, the family court found that Prem had previously sought for the child to attend private school and sought for Smith to pay half the private school tuition or cost. And it found that "it has not been until she lost her most recent motion to relocate that she will not support the private school tuition." (R., p. 404.)

Though its September 2020 opinion may not be a model of judicial decorum or scholarship, the family court made clear its view of the facts and its legal reasoning (albeit with no discussion of any controlling authority) on matters of calculating child support and requiring the payment of private school tuition.

In sum, though the family court did not formally denominate findings of fact and conclusions of law, it did discuss its perception of the facts and its legal reasoning in its opinions and/or orders–thus distinguishing this case from authority vacating judgments or orders for failing to state any findings of fact on an issue or any indication of the legal basis for its ruling. *See Elkins v. Elkins*, 359 S.W.2d

620, 622 (Ky. 1962); *Skelton v. Roberts*, 673 S.W.2d 733, 733-34 (Ky. App. 1984). *See also Anderson*, 350 S.W.3d at 457 (vacating denial of relocation motion because family court failed to state any factual reasons for determining that move was not in child's best interest).[11]

While the question of whether the family court's findings are properly supported by evidence and whether its conclusions are consistent with controlling authority are not before us, we cannot vacate the orders complained of in Prem's brief on the basis of failure to comply with CR 52.

## CONCLUSION

For the reasons stated herein, we affirm.

ALL CONCUR.

BRIEFS FOR APPELLANT:

William D. Tingley
Ft. Mitchell, Kentucky

BRIEF FOR APPELLEE:

Jeremy S. Aldridge
Elizabethtown, Kentucky

---

[11] Though Prem aptly cites authority indicating that the judiciary should be required to follow rules just as the parties must, *see Delahanty v. Commonwealth*, 558 S.W.3d 489, 507 (Ky. App. 2018), here the family court substantially–though informally–complied with his CR 52.01 obligations to render findings of fact and conclusions of law by discussing its perception of the facts and the reasoning behind his decisions. We believe our reasoning is consistent with a recent opinion of the Kentucky Supreme Court. *See generally Smith v. McCoy*, __ S.W.3d.__, 2021 WL 3828565 (Ky. Aug. 26, 2021).