**Keith McKINNEY, Sr., Appellant**

v.

**Kimberly Lynn McKINNEY, Appellee.**

**No. 2006–CA–002132–MR.**

Court of Appeals of Kentucky.

June 13, 2008.

Katie Marie Brophy, Louisville, KY, for appellant.

Victoria Ann Ogden, Louisville, KY, for appellee.

Before DIXON and NICKELL, Judges; GRAVES,[1] Senior Judge.

## OPINION

DIXON, Judge.

Appellant, Keith McKinney, Sr., appeals from an order of the Jefferson Circuit Court imputing to him a monthly income of $8,000 for the purposes of establishing child support in accordance with the Kentucky Child Support Guidelines. Because we are unable to determine the basis for the Court's decision, we remand this matter for additional findings of fact.

Keith and Kimberly McKinney were married on November 6, 1999. Two children were born during the marriage, Casey, born March 14, 2001, and Taylor, born November 19, 2003. On December 16, 2005, the parties entered into a Marital Settlement Agreement that was subsequently incorporated into the Decree of Dissolution of Marriage, entered February 23, 2006.

The settlement agreement resolved all issues concerning marital property division, restoration of non-marital property, debt, and child custody. However, the agreement explicitly reserved the issues of child support and work-related childcare expenses. The parties were subsequently unable to reach an agreement concerning child support and the matter was set for a hearing. Thereafter, on July 18, 2006, the trial court entered an order finding, in pertinent part, as follows:

During the marriage, the parties' main source of income came from "flipping" real estate. When the parties married in 1999 they owned one (1) piece of real property. At the time of the parties' divorce they had accumulated fourteen (14) properties with a total estimated equity of $1,265,000....

Mr. McKinney continues to flip properties and practices part-time as an attorney. Mr. McKinney earned $17,800 as an attorney in 2005. Additionally, Mr. McKinney received the remainder of the parties' property in the Agreed Order with an approximate equity of $845,000. The Court imputes income to Mr. McKinney of $8,000 per month. This adjusted gross income includes income from the law practice, rental property, and capital gains.... Based on the Kentucky Child Support Guidelines, the Court orders Mr. McKinney to pay $912.48 per month or $210.73 per week child support.

█ Keith subsequently filed a CR 59 motion to alter, amend or vacate, as well as a motion pursuant to CR 52.02 requesting additional findings of fact regarding the imputation of $8,000 monthly income. Keith contended that the evidence submitted to the trial court showed that the properties awarded to him had realized a negative cash flow for the prior two years. Further, his motion for additional findings requested:

2. Respondent respectfully requests this Court specifically find an amount of the anticipated gross and adjusted gross income incident to Respondent's part-time law practice, as well as, a specific sum (AGI) from Respondent's rental properties.

3. Should the above figures fail to total $8,000 monthly, and the Court not amend the Respondent's 'income' for

---

1. Senior Judge J. William Graves sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

child support calculations accordingly, Respondent respectfully requests this Court to set forth the basis for the imputation of $8,000 monthly (AGI) income.

On September 6, 2006, the trial court entered an order denying Keith's motion for additional findings.[2] This appeal ensued.

Keith argues to this Court that there was no evidence submitted to support the trial court's imputation of $8,000 in monthly income. He maintains that his one person part-time law practice does not generate any significant income. Further, he asserts that the income tax documentation established that the only two rental properties with a positive cash flow were both awarded to Kimberly, and that his properties had generated significant losses. Keith claims that at the time of the July hearing in this matter, he had been unable to sell or refinance any of the properties and was spending the majority of his time renovating and repairing such in an attempt in achieve full occupancy. Keith contends that, at a minimum, he was entitled to additional findings as to how the trial court arrived at the $8,000 figure.

Kimberly responds that the trial court, in imputing income to both parties, opted to calculate child support based on the "potential income" of each party. *See* KRS 403.212(2)(d). She argues that $8,000 per month is not an unreasonable income since Keith is a licensed attorney who simply chooses to spend his time on real estate ventures. Further, Kimberly contends that the trial court was not required to segregate Keith's potential earnings as an attorney from those generated by the rental properties.

As are most other areas of domestic relations law, the establishment, modification, and enforcement of child support is generally prescribed by statute and largely left, within the statutory parameters, to the sound discretion of the trial court. *Van Meter v. Smith,* 14 S.W.3d 569, 572 (Ky.App.2000). In *Downing v. Downing,* 45 S.W.3d 449, 454 (Ky.App. 2001), a panel of this Court discussed the standard of review for appellate courts in child support matters:

> Kentucky trial courts have been given broad discretion in considering a parent's assets and setting correspondingly appropriate child support.... However, a trial court's discretion is not unlimited. The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

*See also Wilhoit v. Wilhoit,* 521 S.W.2d 512, 513 (Ky.1975).

Clearly, the findings of a trial court will not be disturbed by this Court if they are supported by substantial evidence. *Gossett v. Gossett,* 32 S.W.3d 109, 111 (Ky. App.2000); CR 52.01. CR 52.01 provides, in pertinent part, "In all actions tried upon the facts without a jury ..., the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.]"

Following the entry of the trial court's July 2006 order setting child support, Keith filed a motion pursuant to CR 52.02 for additional findings of fact regarding the amount of income that was imputed to him. The trial court denied the motion. Thus, the issue herein is whether the omitted finding involves a matter which was

---

**2.** The trial court did amend its July 2006 order to credit Keith for his child support obligation for a prior born child.

essential to the trial court's judgment. We believe that it does.

"Trial courts establishing child support ... have the discretion and the duty to scrutinize taxable income and to deviate from it whenever it seems to have been manipulated for the sake of avoiding or minimizing a child support obligation...." *Snow v. Snow,* 24 S.W.3d 668, 672 (Ky.App.2000). Kimberly is correct that for purposes of determining child support, a court may impute income to a party it finds to be voluntarily unemployed or underemployed. KRS 403.212(2)(d) provides that

> [i]f a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income.... Potential income shall be determined based upon employment potential and probable earnings level based on the obligor's or obligee's recent work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community. A court may find a parent to be voluntarily unemployed or underemployed without finding that the parent intended to avoid or reduce the child support obligation.

However, the trial court herein did not make a finding that Keith was voluntarily underemployed. In fact, other than generally stating that the imputed income was derived from Keith's law practice, rental properties and capital gains, the trial court provided no explanation as to how it reached the $8,000 a month figure.

Without adequate factual findings, we are unable to meaningfully review the trial court's decision. We are in complete agreement with the reasoning recently espoused by another panel of this Court addressing the same issue. In an unpublished opinion, the Court wrote:

It is well-established that a final judgment shall not be set aside because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless the failure is brought to the attention of the trial court by a written motion pursuant to CR 52.02. CR 52.04. In the absence of such a motion, this Court must presume that the evidence presented at trial supports the trial court's conclusions. *Cherry v. Cherry,* 634 S.W.2d 423, 425 (Ky.1982). But conversely, CR 52.02 does not require a trial court to make additional findings in response to a motion. The rule simply states that the court "may amend its findings or make additional findings" in response to a motion. By its own terms, the rule permits the trial court to determine the sufficiency of its factual findings.

But where a party preserved the issue through a proper motion, the question on appeal is whether the omitted finding involves a matter which was essential to the trial court's judgment. As this involves a question of law, we need not defer to the trial court's conclusion that its findings were sufficient. Furthermore, since the issue is preserved for review, this Court is not required to presume that the evidence supports the trial court's conclusions.

*Jarrett v. Jarrett,* 2006–CA–001557–MR, 2007 WL 2460730 (August 31, 2007).

We are of the opinion the omitted finding involves a matter which was essential to the trial court's judgment. As such, the trial court erred by denying Keith's motion for additional factual findings on this issue. Consequently, this matter must be remanded for additional findings. *Greathouse v. American National Bank and Trust Co.,* 796 S.W.2d 868, 870 (Ky.App. 1990).

In rendering the decision herein, we are cognizant of the fact that CR 52.01 specifically states that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 or any other motion except as provided in Rule 41.02." Although the instant appeal arises from "decisions of motions," the issue of child support was initially raised in Kimberly's petition for dissolution and was only resolved after an evidentiary hearing. Thus, we conclude that the crux of this appeal stems from an action "tried upon the facts without a jury[,]" as set forth in CR 52.01.

However, we are also of the opinion that CR 52.01, as currently written, is not only overbroad but illogical. The majority of orders and judgments from the trial court originate from a motion. Many motions require a court to try the issues upon the facts. To hold that a trial court is not obligated to make findings of fact when ruling on a motion of any kind except as provided in CR 41.02 [3] necessarily deprives litigants of an understanding of the order or judgment, as well as inhibits any type of meaningful appellate review. We would urge our Supreme Court and Rules Committee to review and revise CR 52.01.

This matter is remanded to the Jefferson Circuit Court for further findings of fact in accordance with this opinion.

ALL CONCUR.

---

**3.** CR 41.02 requires a trial court to make findings of fact when granting a motion for involuntary dismissal if such decision is made on the merits of the case.