Lisa McGREGOR, Appellant/Cross–Appellee,

v.

Robert T. McGREGOR, Appellee/Cross–Appellant.

Nos. 2009–CA–000614–MR, 2009–CA–000632–MR.

Court of Appeals of Kentucky.

Feb. 18, 2011.

Terry W. Holloway, Louisville, KY, for appellant.

Mary Janice Lintner, Louisville, KY, for appellee.

Before ACREE, COMBS, and WINE, Judges.

## OPINION

WINE, Judge:

This is an appeal and cross-appeal from findings of fact, conclusions of law and judgment by the Jefferson Family Court in an action dissolving the marriage of Lisa McGregor ("Lisa") and Robert Todd McGregor ("Todd"). In her direct appeal, Lisa argues that the trial court abused its discretion by setting a shared-custody schedule for the children, by imputing income to her, by awarding an inadequate amount of child support and maintenance, and by its division of the parties' debts. In his cross-appeal, Todd asserts that the amount and duration of maintenance was excessive. Finding no abuse of discretion on any of these issues, we affirm.

### Facts and Procedural History

Lisa and Todd McGregor were married on October 14, 1989. Two children were born of the marriage: Cameron in 1995 and Lauren in 1998. Lisa filed a petition for dissolution of the marriage on March 25, 2008, seeking, among other things, joint custody of the children, child support, division of the marital property, and maintenance. In June 2008, the trial court entered several temporary orders granting the parties joint custody of the children. Under the terms of these orders, the parties were given shared physical custody of the children, with each party having the children approximately 50% of the time based on Todd's work schedule. The trial court also ordered Todd to continue paying the children's and other household expenses and to pay temporary maintenance of $150.00 per week.

Following extensive discovery, the matter proceeded to a bench trial on October 9, 2008. On January 6, 2009, the trial court entered a decree dissolving the marriage. The court also entered a separate order detailing its findings of fact and conclusions of law on the contested issues involving custody of the children, child support, maintenance, and division of property and debts. Thereafter, Lisa filed a motion to alter, amend or vacate the findings. On February 19, 2009, the trial court entered an order amending several of its findings but denying Lisa's motion to alter the judgment. Lisa then filed a sec-

ond Kentucky Rule of Civil Procedure ("CR") 59.05 motion, requesting that the trial court designate its order as final and appealable. The trial court granted this motion on March 6, 2009. This appeal and cross-appeal followed.

*Parenting Schedule*

■ Lisa first argues that the trial court abused its discretion by continuing the equally shared-custody schedule set out in its first custody order. Todd works as a pilot for Comair Airlines. He generally flies 75–80 hours a month, working alternate weeks. Due to Todd's occupation, the trial court concluded that a rigid parenting schedule would prohibit him from having regular contact with the children. Instead, the trial court continued the shared-custody arrangement set out in its temporary order. The court directed that the parties shall equally share parenting time on an alternating-week schedule. The trial court further provided that this schedule would be based upon Todd's flight schedule and that Todd be required to provide a copy of his work schedule to Lisa as soon as it becomes available. However, the court specified that Todd shall not have parenting time with the children more than 50% of the time.

Lisa maintains that this parenting schedule is too restrictive and is unworkable. She alleges that Todd fails to communicate with her and that Todd's work schedule is subject to constant changes or short notice. Consequently, Lisa contends that the trial court should not have continued the shared-custody arrangement.

■■ This Court will only reverse a trial court's determinations regarding a parenting schedule if they constitute a manifest abuse of discretion or were clearly erroneous in light of the facts of the case. *Drury v. Drury,* 32 S.W.3d 521, 525 (Ky.App.2000). The trial court concluded that the shared-custody schedule best served the children's need for consistency and was working well for the parties. We may not disturb the trial court's factual findings unless they are manifestly against the weight of the evidence or not supported by substantial evidence. *Sherfey v. Sherfey,* 74 S.W.3d 777, 782 (Ky.App.2002). " 'Substantial evidence' is evidence of substance and relevant consequence sufficient to induce conviction in the minds of reasonable people." *Id.*

Contrary to Lisa's argument, there was testimony that the parties were able to communicate effectively regarding the children. The court specifically directed that Todd provide his work schedule as soon as it becomes available in order to minimize any inconvenience to Lisa. The trial court found that the children had done well with the alternating-week schedule and that it was in their best interests to spend time with both parents on a consistent and regular basis. Although Lisa disagrees with the trial court's findings, we conclude that they were supported by substantial evidence. Furthermore, we find that the trial court did not abuse its discretion in setting the parenting schedule.

*Imputation of Income*

■ Lisa next argues that the trial court erred by imputing income to her for purposes of determining child support and maintenance. Lisa has not worked outside the home since Cameron was born in 1995. Historically, Lisa had been employed as a graphic designer earning up to $28,000.00 per year. In 2001, she applied for and obtained a position as a graphic designer, but the parties agreed that she would not accept it. Lisa recently started two personal concierge businesses. She testified that she has been actively trying to expand these businesses, but her highest income up to the date of trial has been $515.00 a month. However, she further testified

that she is hopeful that the businesses will eventually produce an income of $4000.00–$8000.00 a month.

Based on Lisa's work history and educational background, the trial court found that she is voluntarily underemployed and capable of earning an income of $2000.00 a month. The court then proceeded to make its child support and maintenance determinations from that amount. Lisa contends that the trial court failed to take her recent work history into account when it found she is underemployed.

Kentucky Revised Statute ("KRS") 403.212(2)(d) allows a court to base child support on a parent's potential income if it determines that the parent is voluntarily unemployed or underemployed. The statute further provides that a "court may find a parent to be voluntarily unemployed or underemployed without finding that the parent intended to avoid or reduce the child support obligation." Rather, a parent's potential income must be based upon the parent's "employment potential and probable earnings level based on the obligor's or obligee's recent work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community." KRS 403.212(2)(d).

■ In contrast, the maintenance statute, KRS 403.200, does not explicitly include a similar provision permitting a court to impute income to a voluntarily unemployed or underemployed spouse. In determining if a spouse is entitled to maintenance, a trial court must find, among other things, that the spouse seeking maintenance "[i]s unable to support [herself] through appropriate employment...." KRS 403.200(1)(b). To set the appropriate amount and duration of maintenance under KRS 403.200(2), the court must consider several factors, including a spouse's financial resources, ability to find appropriate employment, and the standard of living enjoyed during the marriage. While a case of first impression, it is implicit in this statutory language that a court may impute income to a voluntarily unemployed or underemployed spouse to determine both the spouse's entitlement to maintenance and the amount and duration of maintenance. This practice has found favor in other jurisdictions throughout the United States when a trial court has imputed income to an underemployed or unemployed spouse. *See, Evans v. Evans,* 45 S.W.3d 523 (Mo.App.2001) (imputing income to a spouse requesting maintenance); *Stirewalt v. Stirewalt,* 307 S.W.3d 701 (Mo.App.2010) (imputing income to a spouse required to pay maintenance); *LeRoy v. LeRoy,* 600 N.W.2d 729 (Minn.App.1999) (a court may consider past earnings and earning capacity to estimate future income in determining ability to pay maintenance); *Steinberg v. Steinberg,* 59 A.D.3d 702, 874 N.Y.S.2d 230 (N.Y.2009) (may impute income based upon a party's past income *or* demonstrated future potential earnings).

In this case, the trial court took Lisa's work history and education into account when it determined her earning capacity. In addition, the trial court considered Lisa's own testimony concerning the possible income she expects from her businesses. It was within the trial court's discretion to take this evidence into consideration, and Lisa does not show that the trial court's finding is clearly erroneous.

*Deviation from Child Support Guidelines*

■ Lisa also argues that the trial court erred by deviating from the child support guidelines when setting child support. Based on the shared-parenting schedule, the trial court found that it was appropriate to deviate from the child support guidelines. The court also recognized that Todd was paying for the children's health and dental insurance. Consequently, the trial court ordered Todd to pay child sup-

port in the amount of $275.00 per month. In addition, the court ordered the parties to divide the children's extraordinary medical expenses in proportion to their respective incomes.

■ Under KRS 403.211(2) and (3), a trial court may deviate from the child support guidelines only when it finds that application of the guidelines would be unjust or inappropriate. Lisa contends that the trial court failed to set out sufficient findings to justify a deviation from the child support guidelines. However, the trial court must specifically set out its reasons for deviating from the child support guidelines, and in this case, it did specifically justify that deviation based on the shared-parenting schedule. Furthermore, the period of time during which the children reside with each parent may be considered in determining child support, and a relatively equal division of physical custody may constitute valid grounds for deviating from the guidelines. *Plattner v. Plattner*, 228 S.W.3d 577 (Ky.App.2007). *See also Downey v. Rogers*, 847 S.W.2d 63, 65 (Ky.App.1993). Given the shared-custody arrangement, the trial court was within its discretion to deviate from the guidelines.

Lisa also complains that the trial court improperly considered Todd's payment of the children's private school tuition in its decision to deviate from the guidelines. In its initial order, the trial court stated that it had considered these payments in its calculation of child support. But in its amended order, the trial court stated that it did *not* consider the private school tuition in its calculation of child support.

While these findings appear to be conflicting, the court's amended order explains the discrepancy. The court noted that the children have attended private school since kindergarten. Both parties wish for this arrangement to continue.

Todd testified that he intends to continue paying for the children's education. However, Lisa has negotiated a reduction in the cost of the children's tuition. When considered in context, the trial court's amended order indicates that it considered the contributions of both parties to the children's tuition and determined that neither party was entitled to an offset for their contribution. Further, it appears that had the trial court allowed a credit for the private school tuition, Todd's monthly child support contribution may well have been slightly reduced. Given that the trial court was within its discretion to deviate from the guidelines based on the shared-parenting schedule, we cannot find that the trial court clearly erred or abused its discretion in its discussion of the private school tuition.

*Maintenance*

■ Both parties argue that the trial court abused its discretion by ordering Todd to pay Lisa $2000.00 a month in maintenance for seven years. On appeal, the parties agree that Lisa is entitled to maintenance under the standards set out in KRS 403.200(1). However, Lisa maintains that the amount is inadequate, and Todd contends that the amount and duration are excessive.

■ In determining maintenance, trial courts must consider the factors set out in KRS 403.200(2). However, the statute does not require the court to make specific findings of fact as to each relevant factor. *Drake v. Drake*, 721 S.W.2d 728 (Ky.App.1986). Moreover, the amount and duration of the maintenance award are matters within the sound discretion of the trial court. *Gentry v. Gentry*, 798 S.W.2d 928 (Ky.1990). "As an appellate court ... this Court is [not] authorized to substitute its own judgment for that of the trial court on the weight of the evidence, where the

trial court's decision is supported by substantial evidence." *Leveridge v. Leveridge*, 997 S.W.2d 1, 2 (Ky.1999) (citation omitted). This Court may disturb the trial court's order only if the trial court abused its discretion or based its decision on findings of fact that are clearly erroneous. *Powell v. Powell*, 107 S.W.3d 222, 224 (Ky. 2003).

Lisa primarily argues that the trial court abused its discretion by awarding maintenance based upon the income which it imputed to her. Since we have found that the trial court did not clearly err by imputing income to Lisa, we cannot find that the trial court abused its discretion by awarding maintenance based on this amount.

In his cross-appeal, Todd argues that the award of $2000.00 per month in maintenance for seven years is excessive in both amount and duration. He argues that the court should have awarded maintenance for a shorter period in declining amounts. But while the evidence may have supported such an award, we cannot find that it *compelled* that result.

The trial court noted that the parties had been married for over eighteen years and that Lisa had voluntarily left her employment following the birth of their first child. Although Lisa is able to work, the court recognized that the long gap in her employment history may limit her earning potential. The parties enjoyed a comfortable, although not an extravagant, lifestyle. Furthermore, Todd continues to earn substantially more than Lisa is likely to earn, at least in the near term. Thus, the court concluded that seven years is a reasonable period for Lisa to receive the full amount of maintenance. We find no basis to disturb the trial court's decision on these matters.

## Assignment of Debt

 Finally, Lisa argues that the trial court inequitably assigned too much debt to her. The trial court directed that Lisa would be responsible for the entire home equity line balance of approximately $21,000.00, for half of the primary mortgage payment until the residence was sold, and for the balances on her personal credit cards. Lisa complains that this is an excessive amount of debt given her limited income and resources.

 However, the division of marital property and debt is within the sound discretion of the trial court and will not be disturbed unless we find an abuse of discretion. *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 523 (Ky.2001). Furthermore, there is no presumption that debts incurred during the marriage are marital. Rather, the party claiming that a debt is marital has the burden of proof. *Id.* In making this determination, the trial court should consider receipt of benefits, the extent of participation, whether the debt was incurred to purchase assets designated as marital property, whether the debt was necessary to provide for the maintenance and support of the family, and any economic circumstances bearing on the parties' respective abilities to assume the indebtedness. *Id.*

In this case, the trial court made specific findings regarding the debt. The trial court found that Lisa took out the home equity line without Todd's knowledge. Indeed, she acknowledged that she forged Todd's signature on the loan documents. Although Lisa claimed that she used the home equity line to pay for renovations for the marital residence, the trial court found no evidence to support this claim. Further, the trial court found that the parties received a $42,850.00 payment from Comair, which was deposited into the parties' joint account around the time they pur-

chased the residence. The trial court accepted Todd's testimony that these funds were used to pay for the renovations, and Lisa does not show that this finding was clearly erroneous.

Similarly, the trial court found that Lisa failed to present any evidence to show what items were purchased with the credit accounts in her name. Since she cannot show that the debt was incurred for marital purposes, the trial court did not clearly err in finding the debt to be non-marital.

Finally, the trial court ordered the parties to sell the marital residence and divide the proceeds after payment of the first mortgage. Lisa's obligation for half of the mortgage payment would presumably end at that time, and her share of the proceeds would be available to pay the home equity line balance. The trial court ordered Todd to pay the majority of the other marital debt. Under the circumstances, we cannot find that the trial court's division of marital debt was manifestly unfair.

Accordingly, the judgment of the Jefferson Family Court is affirmed.

ALL CONCUR.