RENDERED: DECEMBER 22, 2021; 10:00 A.M.
TO BE PUBLISHED
OPINION OF AUGUST 20, 2021, WITHDRAWN

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1441-ME

JUSTIN KYLE JOHNSTON                                                    APPELLANT


APPEAL FROM HARDIN CIRCUIT COURT
v.          HONORABLE PAMELA ADDINGTON, JUDGE
ACTION NO. 20-D-00474-001


CINDY PATRICIA JOHNSTON                                                  APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, JONES, AND McNEILL, JUDGES.

McNEILL, JUDGE: Appellant, Justin Kyle Johnston ("Justin"), appeals from the

Hardin Family Court's entry of a domestic violence order ("DVO") granted on

behalf of Appellee, Cindy Patricia Johnston's ("Cindy") minor child. Following a

careful review of the record and the law, we affirm.

# I.    BACKGROUND

Justin and Cindy were married in 2017.  On September 21, 2020, Cindy, on her own behalf and on behalf of her minor child, S.O., filed a petition seeking a DVO restraining Justin.  Cindy alleged in her petition that on September 19, 2020:

> My family and I were at a [friend's] BBQ . . . when my [12-year-old] daughter told Kim Luna that Justin Johnston kissed her and [tried] to stick his [tongue] in her mouth.  Justin even told two of the men[,] Jose Luna and Carslo Lowery in the back yard that "his wife and daughter were bitches["] over and over and never used [their] names and stated ["]he wanted a divorce from them.["]  Chris Green, Terra Green, Tasha Lower were also [present] during the [incident] when my child spoke up.  I'm worried he is going to return to [the] house while I'm not home when my child doesn't have school.

Based on Cindy's petition, the Hardin Family Court entered an emergency protective order and issued a summons for Justin.  The family court held a domestic violence hearing on October 5, 2020.  At the hearing, the family court heard testimony from Cindy, Justin, and S.O.  Cindy testified:

> Counsel:    Tell me what happened.  [S.O.] made a disclosure . . . we've only got a few minutes, so . . .
>
> Cindy:    She made a disclosure at a barbecue that my husband physically sexually assaulted her.
>
> Counsel:    By doing what?

-2-

Cindy: That he kissed her and stuck his tongue in her mouth. And she mentioned it to me, but I did not believe her at the time because she was going through phases where she was lying.

. . .

Cindy: [S.O.] was not with me when she told Kim what happened. I was in the back [yard] and [S.O.] and Kim were in the front of the house.

. . .

Counsel: Why did you file this [petition]?

Cindy: To protect my child because I am a rape victim.

Counsel: This isn't . . . about you. You filed this on [S.O.'s] disclosure?

Cindy: Yes.

Counsel: And you believe S.O.'s disclosure is truthful?

Cindy: Yes.

. . .

Counsel: Do you believe that a domestic violence order is necessary to protect S.O. from Mr. Johnston?

Cindy: Yes.

Counsel: And are you asking the court to enter a domestic violence order against Mr. Johnston on behalf of S.O.?

Cindy:      Yes.

. . .

Counsel:    Judge, I'll pass this witness.  I know our
            time is limited.

S.O. also provided sworn testimony at the hearing.  When asked by

the family court judge whether she knew the difference between the truth and a lie,

S.O. stated that she did.  S.O. also testified as follows:

Judge:      You know Justin Johnston, don't you?

S.O.:       Yes.

Judge:      And had Mr. Johnston . . . he's your
            stepfather, correct?

S.O.:       Yes, ma'am.

Judge:      Has Mr. Johnston ever done anything to you
            that made you feel uncomfortable?

S.O.:       Yes, ma'am.

Judge:      Do you want to tell me what that was?

S.O.:       Um, a couple months ago, um, he was like
            drunk, drinking like bourbon and stuff and
            beers.  And then he got drunk while I was
            sitting next to him on the couch.  He pulled
            me over and then he kissed me and then I
            said I wanted to go to bed.

Judge:      Alright where was your mother at when all
            that happened?

S.O.: She was in the bedroom because she had just got home at 7 [o'clock] and it was about 8 or 9 [o'clock] when this situation happened.

. . .

Judge: So, you're saying he pulled you to him and he tried to kiss you, is that what you're saying happened?

S.O.: With his tongue, yes ma'am.

Judge: Okay, is that the only time he's ever done anything like that?

S.O.: Yes. That's the only thing I can remember.

Judge: Okay. And what did you do when he tried to do that?

S.O.: I kind of like pulled back.

Judge: Okay. And did he say anything to you or what did he do?

S.O.: No, um, I went to bed because I asked him if I could go to bed and then I went off to bed. I kind of felt uncomfortable the rest of the night.

Judge: Yeah.

S.O.: Like I kind of stayed up late.

Judge: When did you tell your . . . did you tell your mom when she came home, err, the next day about what happened?

S.O.: Well, this was like . . . when my mom came home, she was tired, she took a shower, ate

> dinner.  She went to bed.  Justin was . . . got
> a little bit drunk because I guess it was like
> his day off or something.  And then the next
> day I had to go to my grandma's, um, I told
> her about it in the car. . . .  I don't remember
> the day, but it was definitely like a Saturday.

Based on S.O.'s testimony and the totality of the evidence presented, the family court judge made an oral finding of domestic violence with respect to S.O., but not with respect to Cindy.  At that point, Justin's counsel and the family court engaged in the following exchange on the record:

> Counsel:    Judge, I know you're in a hurry, but just so
> the record's clear.  Are you finding that, uh,
> the kiss constitutes, uh, sex abuse, or what
> under the statute?
>
> Judge:    Well, I think it falls within the definition of
> domestic violence because I think it put her
> in fear that a kiss was going to maybe lead
> to something worse.  I think a child of her
> age, that puts her in imminent fear of bodily
> harm.  So, I'm making a finding of domestic
> violence.  I'm going to enter the DVO for a
> period of one year.

Following that hearing, the Hardin Family Court entered a DVO on behalf of S.O. on Administrative Office of the Courts (AOC) Form 275.3.[1]  This appeal followed.

---

[1] The DVO at issue herein expired on October 5, 2021.  However, its expiration does not moot the instant appeal because of the collateral consequences of the DVO.  *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App 2010).

-6-

## II.    STANDARD OF REVIEW

We review the entry of a DVO for whether the trial court's finding of domestic violence was an abuse of discretion.  *McKinney v. McKinney*, 257 S.W.3d 130, 133 (Ky. App. 2008).  Our review of the trial court's factual findings is limited to whether they were clearly erroneous.  Kentucky Rules of Civil Procedure ("CR") 52.01; *Hall v. Smith*, 599 S.W.3d 451, 454 (Ky. App. 2020).  A trial court's factual determination is not clearly erroneous if it is supported by substantial evidence, which is evidence of sufficient probative value to induce conviction in the minds of reasonable people.  *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

## III.    ANALYSIS

"A trial court is authorized to issue a DVO if it 'finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]'"  *Castle v. Castle*, 567 S.W.3d 908, 915 (Ky. App. 2019) (quoting Kentucky Revised Statutes ("KRS") 403.740(1)).  "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence."  *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App. 2010) (citing *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007)).  In *Caudill*, this Court addressed the DVO process and discussed the construction of DVO statutes:

> While domestic violence statutes should be construed liberally in favor of protecting victims from domestic violence and preventing future acts of domestic violence[,] the construction cannot be unreasonable. Furthermore, we give much deference to a decision by the family court, but we cannot countenance actions that are arbitrary, capricious or unreasonable.

*Id.* at 115 (internal quotation marks and citations omitted).

KRS 403.720(1) defines domestic violence and abuse as "physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple." On appeal, Justin argues that, even assuming the incident had occurred as S.O. alleges that it did, the act of kissing his 12-year-old stepdaughter does not, without more, constitute domestic violence as defined by KRS 403.720(1).[2] Justin asserts that absent testimony from S.O. that she was fearful that he would attempt to kiss her again or that he may harm her in the future, there was insufficient evidence for the family court to find that Justin placed S.O. in "fear of imminent physical injury."

In addressing Justin's arguments on the merits of the family court's findings, we must first address the scope of what to consider on review.

---

[2] We note that in his testimony at the October 5, 2020 hearing, Justin did deny that the incident took place as described by Cindy and S.O.

-8-

The DVO issued by the family court consists of the court's having filled out AOC Form 275.3 and checking the box under the "Additional Findings" heading corresponding to "For the Petitioner against the Respondent in that it was established, by a preponderance of the evidence, that an act(s) of domestic violence or abuse . . . has occurred and may again occur[.]" Moreover, the family court checked the box under the "Additional Terms of Order" heading conveying the following term:

> In order to assist in eliminating future acts of domestic violence and abuse, dating violence and abuse, stalking, or sexual assault IT IS HEREBY ORDERED that the findings of fact and conclusions of law announced on the record as set forth hereinabove are expressly and specifically are expressly and specifically [sic] incorporated by reference herein as if written in full. *Boone v. Boone*, 463 S.W.3d 767, 768 (Ky. App. 2015); *Kindred Nursing Centers, Ltd. Partnership v. Sloan*, 329 S.W.3d 347, 349 (Ky. App. 2010).

We are mindful that "[a] family court is obligated to make written findings of fact showing the rationale for its actions taken under KRS Chapter 403, including DVO cases, even if the rationale may be gleaned from the record." *Thurman v. Thurman*, 560 S.W.3d 884, 887 (Ky. App. 2018). Indeed, the importance of a trial court's written findings is emphasized in family law matters. *See, e.g.*, *id.*; *Anderson v. Johnson*, 350 S.W.3d 453, 458 (Ky. 2011); *Keifer v. Keifer*, 354 S.W.3d 123, 125-26 (Ky. 2011).

The family court's method of incorporating its oral findings into its written order, however, was recently approved by the Kentucky Supreme Court in *Smith v. McCoy*, No. 2021-SC-0050-DGE, ___ S.W.3d ___, 2021 WL 3828565 (Ky. Aug. 26, 2021):[3]

> As previously described, the trial court made findings of fact and conclusions of law orally at the end of the hearing. It also fully and accurately completed AOC Form 275.3, finding, by a preponderance of the evidence, that acts of sexual abuse had occurred and may occur again. Finally, it entered a written order expressly and specifically incorporating its oral findings and conclusions into the written order. We hold this was sufficient to meet the trial court's duty to engage in at least a good faith effort at fact-finding and that the found facts be included in a written order.

*Id*. at *4 (internal quotation marks and citation omitted). Considering *Smith*, the family court's oral findings of fact were properly incorporated into its written order and we consider those findings in an effort to determine whether the family court erred.

We agree with the rationale expressed by the family court. The act of an adult attempting to kiss a twelve-year-old child with his tongue is more than sufficient to create a concern in the child's mind that sexual abuse may occur in the

---

[3] A previous version of this Opinion was rendered by the Court on August 20, 2021, six days before the Kentucky Supreme Court rendered its Opinion in *Smith*. In light of the similarity of the issues and the guidance provided in *Smith*, this Court withdrew its previous Opinion by order entered September 3, 2021.

future.  In the family court's words, "it put her in fear that a kiss was going to maybe lead to something worse.  I think a child of her age, that puts her in imminent fear of bodily harm."  That is a reasonable presumption under the circumstances.  We certainly cannot say that such a finding is clearly erroneous.

When reviewing a decision on a DVO petition, "the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion."  *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008) (citations omitted).  As the family court did not abuse its discretion in entering the DVO, its decision will not be disturbed on appeal.

For the foregoing reasons, we affirm the family court's decision to grant the petition for a DVO.


ALL CONCUR.


| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Douglas E. Miller | Cindy P. Johnston, *pro se* |
| Radcliff, Kentucky | Elizabethtown, Kentucky |