RENDERED: JULY 15, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0435-MR

ANASTASIA G. STIEGELMEYER          APPELLANT

         APPEAL FROM KENTON CIRCUIT COURT
v.          HONORABLE CHRISTOPHER J. MEHLING, JUDGE
         ACTION NO. 19-CI-01657

MICHAEL PATRICK          APPELLEE
STIEGELMEYER

AND

NO. 2021-CA-0850-MR

MICHAEL P. STIEGELMEYER          APPELLANT

         APPEAL FROM KENTON CIRCUIT COURT
v.          HONORABLE CHRISTOPHER J. MEHLING, JUDGE
         ACTION NO. 19-CI-01657

ANASTASIA G. STIEGELMEYER          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, LAMBERT, AND McNEILL, JUDGES.

CETRULO, JUDGE:  Anastasia G. Stiegelmeyer (now Kavouras) ("Anastasia")
and Michael P. Stiegelmeyer ("Michael") cross-appeal the Kenton Circuit Court
Order and Supplemental Order, as amended, entered upon the dissolution of their
marriage, which detailed their maintenance and child support payments and denied
Michael's CR[1] 52.02 motion for additional findings.  After both appeals were
submitted, Anastasia filed a motion to consolidate the appeals and Michael joined
her motion.  This Court granted that motion and ordered the briefs to be governed
by CR 76.12.[2]  Further, this Court ordered Anastasia's appeal to be treated as the
"lead" appeal and Michael's appeal as the "cross-appeal" for briefing purposes.
Having reviewed the record and being otherwise sufficiently advised, we AFFIRM
the Kenton Circuit Court.

## I.  FACTUAL AND PROCEDURAL HISTORY

Anastasia and Michael were married in 2003 and remained together
for 17 years.  The parties now have joint custody of their two minor children –
aged 13 and 11 at the time of briefing – and equally share parenting time.  During
the marriage, Michael was a self-employed, 50% business owner of two

---

[1] Kentucky Rule of Civil Procedure.

[2] This rule details the briefing rules for cross-appeals.

companies: ZAGS, LLC and The 1441 Group, LLC. Anastasia did not work outside of the home during that time and was the primary caregiver for the children. Together, the family enjoyed a lifestyle consisting of expensive vacations, country club memberships, and private schooling for the children.

Anastasia and Michael separated in February 2020 and the Kenton Circuit Court ("family court") tried the matter on December 2, 2020; December 30, 2020; and February 9, 2021. The family court entered its initial findings of fact and conclusions of law, as well as a divorce decree, following the second trial date in December 2020. The family court reserved jurisdiction on all issues including property, custody, and support for decision at a later date. On March 18, 2021, that later date came, and the family court entered a supplemental decree of dissolution and supplemental findings of fact and conclusions of law ("Supplemental Decree").

Within a few days of the Supplemental Decree – and within the ten-day time limit for such motions – Anastasia and Michael each filed a CR 59.05 motion to alter, amend, or vacate the Supplemental Decree.[3] On May 4, 2021, while waiting for the family court to rule on the CR 59.05 motions, Michael filed a CR 52.02 motion for additional findings. The family court held a hearing on all of

_____

[3] Anastasia filed her CR 59.05 motion on March 26, 2021, and Michael filed his on March 29, 2021.

those motions in June 2021, and later that month, granted in part and denied in part the CR 59.05 motions, and denied Michael's CR 52.02 motion ("June Order").

In its June Order, the family court explained that Michael's CR 52.02 motion was untimely because the statute provides a ten-day time limit from the entry of judgment, and Michael filed his motion 47 days after the family court entered the Supplemental Decree. Further, the family court explained that there was no case law to support Michael's argument that the ten-day time limit to file a CR 52.02 motion was stayed upon the filing of the CR 59.05 motions – *i.e.*, that case law stated a CR 59.05 motion only stays the time to file an appeal. Lastly, the family court explained that even if Michael's CR 52.02 motion had been timely, it was without merit and would have been overruled because the court made extensive findings in the Supplemental Decree regarding the contents of his CR 52.02 motion.

The Supplemental Decree, as partially amended by the June Order, found that Michael owed Anastasia the following: 50% of the value of Michael's businesses ($52,289.50) and his interests in the companies; $36,414.51 for Anastasia's debts and $33,811.06 for what would have been her half of the net marital funds (totaling $70,225.57) because Michael had dissipated the marital funds, in violation of the status quo order; $16,349 consisting of one-half of the marital car, IRA, E-Trade IRA, bank accounts, and frequent flyer miles; $557.73

for a utility bill; and $6,506.16 for his portion of the business appraisal. As such, Michael owed Anastasia a total of $138,109.39, to be paid within 180 days of the Order.

Additionally, the family court determined Anastasia was entitled to maintenance of $4,000 per month. The family court made that determination based on Anastasia's monthly expenses (which the court calculated to be $5,145 per month) less her net income available ($1,948 per month), meaning she needed an additional $3,197 per month to cover her expenses.[4] The family court ordered Michael to pay that maintenance award for seven years. Further, the family court ordered him to pay Anastasia's remaining car lease payments, set to conclude in May 2021. Thereafter, Anastasia was to secure her own vehicle.

To determine child support, the family court divided certain expenses by a ratio based on each party's percentage of the total, joint income. Specifically, the family court took Michael and Anastasia's gross incomes, plus the maintenance payments ordered, and calculated that Anastasia's ratio of the parties' total income was 17% and Michael's was 83%. Because Michael far out earned Anastasia, the family court ordered him to pay her $2,885.50 per month in child support. To

---

[4] The family court justified the $800+ surplus between the amount Anastasia needed and the maintenance amount with a discussion on inflation and the unpredictability of life. The family court further noted that the maintenance awarded was far less than the $10,000 per month that Anastasia requested.

reach that amount, the family court explained that it had considered "each party's gross and after-tax income, personal budgets, child related budgets, needs of the children, best interests of the children and the ability of [Michael] to pay[,]" as well as the maintenance order. Further, the family court ordered Michael to cover health insurance for the children; 83% of unreimbursed medical, dental, vision, daycare, and extracurricular expenses; and the full private school tuition for the children.

In making these determinations, the family court relied upon KRS[5] 403.212(5) and *McCarty v. Faried*, 499 S.W.3d 266 (Ky. 2016), which explained that when the parents' income exceeds the child support guidelines, the family court should base child support payments on the parents' ability to pay, the needs of the children, and the lifestyle of the children prior to the divorce.

In conducting that analysis, the family court found Michael's gross income was $400,000 and his net earning capacity/income, after a thorough analysis of requisite federal and state taxes, was $251,930. With maintenance payments of $48,000 per year and child support payments of $36,000 per year, the family court left Michael with $167,931 per year. Further, it calculated Michael's

---

[5] Kentucky Revised Statute.

-6-

expenses were $98,484, which left him $69,447 of disposable income. The family court calculated that Anastasia would be left with $9,636 of disposable income.

As for attorneys' fees, the family court clarified that KRS 403.220 governed, and pursuant to that statute, Anastasia was entitled to reimbursement from Michael for a portion of her attorneys' fees. Therefore, the family court ordered Michael to pay 83% of her attorneys' fees, totaling $53,950. Because Michael had already paid $15,000 of that amount, the court ordered him to pay the remaining $38,950. Lastly, the family court adopted the parties' stipulations filed in February 2021.

Both parties appealed. Anastasia argues that the family court correctly concluded she was entitled to maintenance for a period of seven years; however, she claims the family court erred when it set the monthly maintenance amount at $4,000. Additionally, Anastasia argues the family court erred when it determined $2,885.50 per month was sufficient child support to provide for the needs of the children. Alternatively, Michael argues that the family court ordered him to pay maintenance for too long and at too high an amount. Additionally, Michael argues that the family court erred when it set child support payments at $2,885.50. Lastly, Michael argues the family court erred when it denied his CR 52.02 motion for additional findings.

## II. STANDARDS OF REVIEW

### A. CR 52.02 Motion for Additional Findings

For a proper CR 52.02 motion, "the question on appeal is whether the omitted finding involves a matter which was essential to the trial court's judgment. As this involves a question of law, we need not defer to the trial court's conclusion that its findings were sufficient." *McKinney v. McKinney*, 257 S.W.3d 130, 134 (Ky. App. 2008) (citation omitted). We review questions of law *de novo*. *Davis v. Fischer Single Fam. Homes, Ltd.*, 231 S.W.3d 767, 779 (Ky. App. 2007).

### B. Maintenance

"[T]he amount and duration of maintenance is within the sound discretion of the trial court." *Weldon v. Weldon*, 957 S.W.2d 283, 285 (Ky. App. 1997) (citation omitted). Abuse of discretion only applies in instances where the family court's decision "was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Ciampa v. Ciampa*, 415 S.W.3d 97, 99 (Ky. App. 2013) (citing *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000); *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

### C. Child Support

The abuse of discretion standard governs appellate review of child support awards as well. *Holland v. Holland*, 290 S.W.3d 671, 674 (Ky. App. 2009).

## III. ANALYSIS

As an initial matter, Michael argues that the family court erred when it found his CR 52.02 motion was untimely. The remaining arguments for both parties allege that the family court erred when it calculated the maintenance duration and amount and the child support amount.[6]

### A. CR 52.02 Motion for Additional Findings

CR 52.02 states, in pertinent part, that "the court . . . on the motion of a party made not later than 10 days after entry of judgment, may amend its findings or make additional findings and may amend the judgment accordingly." The family court denied Michael's motion, finding that it was untimely and that the findings in the Supplemental Decree were extensive, so additional findings were unnecessary. Although Michael disagrees with the family court's finding of untimeliness, this Court need not determine that issue because the family court also denied it on its merits, and we agree.

"CR 52.02 does not *require* a trial court to make additional findings in response to a motion. The rule simply states that the court 'may amend its findings or make additional findings' in response to a motion. By its own terms, the rule

---

[6] Both parties argue the other failed to properly preserve one or more arguments; however, the Kentucky Supreme Court has held that "[e]xcepting for tardy appeals and the naming of indispensable parties, we follow a rule of substantial compliance." *Ky. Farm Bureau Mut. Ins. Co. v. Conley*, 456 S.W.3d 814, 818 (Ky. 2015) (citing *Johnson v. Smith*, 885 S.W.2d 944, 950 (Ky. 1994) and *Lassiter v. Am. Express Travel Related Servs. Co., Inc.*, 308 S.W.3d 714, 718 (Ky. 2010)). As such, we will review these arguments on the merits.

permits the trial court to determine the sufficiency of its factual findings."
*McKinney*, 257 S.W.3d at 134 (citation omitted) (emphasis added). As the family court detailed in its June Order, its factual findings regarding "all the things raised by the motion" were "extensive" and therefore sufficient. Importantly, "the question on appeal is whether the omitted finding involves a matter which was essential to the trial court's judgment. As this involves a question of law, we need not defer to the trial court's conclusion that its findings were sufficient." *Id.*

In *McKinney*, this Court found that the family court had not provided adequate findings of fact where, aside from general statements regarding income, "the [family] court provided no explanation as to how it reached the [monthly income] figure. Without adequate factual findings, [this Court was not able] to meaningfully review the trial court's decision." *Id.*

Here, that is not at all the case. The family court provided detailed explanations of each of its calculations regarding the parties' income and expenses, as further detailed below. As such, there were no omissions involving an essential matter that would require a family court to reconsider the motion. *Id.* As such, the family court did not err when it denied Michael's CR 52.02 motion.

### B. Maintenance

First, the parties disagree on whether the family court properly granted maintenance for seven years: Anastasia argues that the family court

correctly concluded she was entitled to maintenance for seven years while Michael argues that that is too long. Next, the parties argue that the family court erred when it set the monthly maintenance amount at $4,000, claiming the family court incorrectly calculated Michael's income. Anastasia argues the family court failed to include sources of income in its calculation that are required under KRS 141.010(19), while Michael claims that experts found his income to be less than the family court determination.

Once the family court awards maintenance, as it did here, it must then consider all of the relevant factors in KRS 403.200(2) to determine the amount and duration:

> (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently . . . ;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> (c) The standard of living established during the marriage;
>
> (d) The duration of the marriage;
>
> (e) The age, and the physical and emotional condition of the spouse seeking maintenance; and
>
> (f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

This Court has explained that "[t]he duration of maintenance must have a direct relationship to two factors: (1) the period over which the need exists, and (2) the ability to pay." *Combs v. Combs*, 622 S.W.2d 679, 680 (Ky. App. 1981). Further, *Combs* emphasized that "[w]e start with the presumption of maintenance for life or until remarriage[,]" which may then be rebutted. *Id.* In *Combs*, this Court found the family court failed to adequately detail the two factors, which resulted in an abuse of discretion. We find no such shortcoming here.

Here, the Supplemental Decree detailed the family court's analysis for maintenance. In pertinent part, the Supplemental Decree explained the first factor[7] – the period over which the need exists – by detailing Anastasia's monthly needs and explaining the time required to begin meeting those needs on her own:

> This court has found that [Anastasia] will have monthly expenses of $5,145.00. [Anastasia] will have net income available to meet these expenses of $1,948.00. *This means her net needs are $3,197.00 per month*. This court shall order maintenance of $4,000.00 per month. This court sets the amount slightly higher than the budgeted need as this court finds that life is unpredictable to a degree and expenses arise that are unpredictable. It is also far less than the $10,000 per month requested. There is also the probability of inflation. Economists are presently debating post-COVID as to whether inflation (which has been low over the last several years) will increase in this new economy. *This maintenance shall be paid for seven years (84 months)*. This is what

---

[7] *See also* KRS 403.200(2)(b).

> [Anastasia] requested, though not in the amount of her request. *This will provide her time to get additional vocational training and experience, as well as time to adjust her life.* . . .

(Emphasis added.)

As to the husband's ability to pay such amount and still provide for his own needs – factor two under *Combs*[8] – the family court explained that

> [it] found that [Michael's] net earning capacity/income is $251,930.00. By ordering maintenance of $48,000.00 per year and child support of $36,000.00 per year, this court leaves [Michael] with a net after taxes income of $167,931.00 per year. This court found that [Michael's] needs for himself and his children were $98,484.00. This leaves [Michael] with $69,447.00 of disposable income, whereas [Anastasia] will have $9,636.00 at best ($4,000.00 - $3,197.00 = $803.00 x 12).

Similarly, in *McGregor v. McGregor*, 334 S.W.3d 113 (Ky. App. 2011), this Court upheld a family court's determination that the wife was entitled to $2,000 per month for seven years. Like here, the family court therein "noted that the parties had been married for over eighteen years and that [the wife] had voluntarily left her employment following the birth of their first child." *Id.* at 119. Further, the family court "recognized that the long gap in [the wife's] employment history may limit her earning potential." *Id.* Lastly, the family court noted that the husband continued "to earn substantially more than [the wife] is likely to earn, at

---

[8] *See also* KRS 403.200(2)(f).

-13-

least in the near term." *Id.* As such, this Court concluded that seven years was a reasonable period for the wife to receive the full amount of maintenance. *Id.* Like *McGregor*, the family court here considered the 17-year marriage, Anastasia's decision to leave employment following the birth of the children, and the gap in employment, which affected her potential earning capacity. The family court thoroughly analyzed the requisite factors and supported its determination with substantial evidence. As such, the family court's decision to award maintenance for a period of seven years was not an abuse of discretion.

Next, both parties argue the family court awarded an inappropriate maintenance amount because it miscalculated Michael's income. To determine the maintenance amount, the family court must consider the relevant KRS 403.200(2) factors but "the statute does not require the court to make specific findings of fact as to each relevant factor." *Id.* at 118 (citing *Drake v. Drake*, 721 S.W.2d 728 (Ky. App. 1986)).

The parties do not argue that the family court failed to consider the relevant factors but instead disagree with *how* the court considered those factors. Anastasia argues the family court erred when it calculated Michael's income because in 2020, by her calculations, Michael received $472,050 from his companies and an additional $35,676 for his car, phone, and medical insurance expenses. Anastasia argues that the additional compensation constituted fringe

-14-

benefits and should have been considered for purposes of gross income. 26

U.S.C.[9] § 61; *see also* KRS 141.010(19). Therefore, Anastasia argues, Michael's

income for 2020 should have been $551,186.40, not the $400,000 the family court

calculated.[10] That discrepancy, Anastasia argues, should reevaluate Michael's

ability to pay additional maintenance.

However, a calculation of the amounts paid to Michael from his

companies in 2020 equals $452,050 (as the family court calculated below), not

$472,050. And contrary to Anastasia's claims, the family court did incorporate

Michael's company-supplied benefits in the income calculation: "The two

corporate entities that he owns 50% of also pay for him to have a vehicle, which is

currently a Toyota Tundra, cell phones for he and his children and family medical

insurance. These are also sources of income for [Michael]."

The family court determined Michael's income/earning capacity was

$347,550.00 in 2019 and $452,050.00 in 2020 (detailed further below), and

calculated Michael's gross income for maintenance purposes to be $400,000.

Anastasia argues the number should be $551,186.40, based on her calculation

above; and Michael argues it should be $262,418, based on an average of his

---

[9] United States Code.

[10] Additionally, Anastasia argues that Michael's companies paid $43,460.40 toward his credit
card debt and the family court failed to consider that money in its income calculation. As
discussed, the family court has discretion to calculate such amounts and need not make specific
findings of fact as to each relevant factor.

self-employment income for years 2016, 2018, and 2019.[11]  These varying calculations are the result of the number of years considered:  Anastasia focuses on one year's alleged income (*i.e.*, 2020), Michael focuses on the three, non-consecutive years prior to 2020, and the family court relied on the two most recent years (*i.e.*, 2019 and 2020).  Michael argues that the family court overstated his income and should have ignored his most recent, highest income year.  As Anastasia does not get to use only the highest income year to make her calculations, Michael does not get to ignore that year and use only his lower income years.

Michael cites *Long v. Long*, 416 S.W.2d 353 (Ky. 1967), to argue that this Court should consider a three-year period, but we are not so convinced.  *Long* simply stated that the family court did not abuse its discretion when it used three years of disclosed income to determine that the husband "might well . . . earn[ ] in excess in $10,000."  *Id.*  at 354.  *Long* did not hold that a family court *must* consider three years of income to determine maintenance, nor did it suggest that a three-year analysis was the only period of time sufficient to avoid an abuse of discretion.  As discussed, the family court has discretion to calculate parties' incomes when determining maintenance.  *Id.*  *Long* clarified that three years fell

---

[11] The reason for this seemingly random selection of years – skipping 2017 – is unclear from Michael's brief.

-16-

within that discretion; however, it did not state that analyzing two years of income fell outside that discretion. *Id.*

Further, the family court thoroughly explained its calculation of Michael's income in its Supplemental Decree:

> As to [Michael's] income and earning capacity, he reported income in 2019 of $347,550.00. In 2020 he received draws totaling $452,050.00. The two corporate entities that he owns 50% of also pay for him to have a vehicle, which is currently a Toyota Tundra, cell phones for he and his children and family medical insurance. These are also sources of income for [Michael]. [Michael] claims that the 2020 number is artificially high. Part is from a PPP loan. The total loan for he and his partner was only $22,320.00. Under current federal regulations this loan will be 100% forgiven provided [Michael] complied with the rules regarding use of these funds. He claims some of the money was from drawing on a line of credit, but that line as of trial for [Michael] and his partner was only $92,000.00. This court concludes that [Michael's] earning capacity and income to be considered to set child support and maintenance is $400,000.00.
>
> To make a determination as to child support and maintenance this court needs to determine net income, post taxes. In this matter [Michael] budgeted $7,200.00 per month or $36,400.00 per year [for taxes]. This court believes this is too low. Based on current tax codes this court finds that [Michael's] tax liability per year for federal and state income taxes and FICA and Self Employment taxes will be approximately $148,610.00. This means [Michael's] net income will be $251,390.00 or $20,950.00 per month.

The family court conducted a reasonable analysis based on the two most recent years of income from Michael's companies and considered additional fringe benefits, taxes, and PPP loans. This Court does not find such consideration to be arbitrary, unreasonable, unfair, or unsupported by sound legal principles. Therefore, the calculation of Michael's income was not an abuse of discretion.

Next, Anastasia argues the family court unreasonably reduced her proposed budget. She argues that the monthly budget she presented at trial – $14,326.12 per month – was reduced by the court's determination on her rent, auto allowance, and retirement savings. The total budget should have been higher. Additionally, she argues the family court erred when it further reduced her budget by apportioning a percentage of her living expenses (*e.g.*, rent, cable, garbage, utilities, home maintenance, insurance, automobile, and related expenses) to the children. Anastasia argues she would incur those expenses without the children.

First, the court thoroughly explained its determination regarding her proposed budget, especially in terms of the decreased rent:

> Meanwhile, [Anastasia] seeks maintenance and child support based on budgets that reflect the lifestyle neither party could afford to begin with. She seeks maintenance of $10,000.00 per month as maintenance for a period of seven years.
>
> An example of this [unaffordable lifestyle] is the Brittany Court home. This court entered an order on August 13, 2020, after holding a hearing to set temporary child support and maintenance. At that time, this court ordered

-18-

the house sold, noting that [Michael] did not want it and [Anastasia] could not afford it. [Anastasia] had her parents purchase the home . . . and then signed a lease for $3,000.00 per month rent on the grounds it was important for the children's stability and [Michael] had agreed to it. He did not. The truth is that the house cannot be afforded by the parties and is not the home the children have known most of their lives. This court rejects a budget for [Anastasia] that includes housing at $3,000.00 as unsustainable. Instead this court will set each parties' housing expense at $1,450.00 per month, the amount [Michael] is paying in rent to his father.

. . .

This court has reviewed [Anastasia's] budget. This budget can be divided into three parts one part that includes [Anastasia] and her children. . . . Another part is for [Anastasia] herself . . . [and] for the children [exclusively]. . . . This court finds that a reasonable budget for [Anastasia] for the shared [Anastasia]/children portion is $4,485.00 per month. This court shall allocate 60% of these expenses to the children and 40% to [Anastasia]: $2,691.00 for the children and $1,794.00 for [Anastasia].

As to [Anastasia's] personal expenses this court finds that a reasonable budget per month is $3,351.00. This includes charity, clothing, cosmetics, entertainment, hair, internet, life insurance, manicures, newspapers, fitness, travel, health insurance and other medical expenses, house maintenance, pets, phone and parking. This court has added $300.00 per month for [Anastasia] for payment into a Roth IRA because [Michael] also budgeted monthly monies for retirement. This is a reasonable request and should apply to each party. This court therefore finds that the total monthly expenses for [Anastasia] that will be incurred is $5,145.00 ($1,794.00 + $3,351.99 = $5,145.00).

-19-

[Anastasia] will also have expenses related to the children. This will include her percentage of responsibility for unreimbursed medical, dental and vision expenses, as extra-curricular expenses . . . . As to expenses such as school activities and fund raisers, clothing, electronics, allowances, money on vacation, hair and miscellaneous [Anastasia's] reasonable needs are $790.00 per month. As to matters that [Anastasia] will be responsible for her percentage (including any daycare) it is difficult to project. It in part will depend on the children's health and how much activities the parents agree upon and the type of activities. This court has budgeted $300.00 per month.

While Anastasia argues that allocating certain expenses to the children was improper, she fails to provide any supporting evidence or case law as to why. As discussed, family courts have great discretion to determine the amount of maintenance. *Weldon*, 957 S.W.2d at 285. Here, the family court acted well within that grant when it walked through the requisite analyses with explicit detail and made its findings based on the substantial evidence provided. The family court did not abuse its discretion when it determined the duration or the amount of maintenance.

## C. Child Support Payments

There is no dispute that the parties' combined income exceeded the child support guidelines and therefore the guidelines did not confine the family

court's analysis. KRS 403.212(5);[12] *McCarty*, 499 S.W.3d at 271. Instead, the family court was correct to determine a reasonable amount of support to meet the children's needs pursuant to KRS 403.212(5). "[And] generally, as long as the trial court gives due consideration to the parties' financial circumstances and the child's needs, and either conforms to the statutory prescriptions or adequately justifies deviating therefrom, this Court will not disturb its rulings." *McCarty*, 499 S.W.3d at 271 (citing *Van Meter v. Smith*, 14 S.W.3d 569, 572 (Ky. App. 2000)).

The parties largely make the same argument as above: that the family court improperly determined Michael's income. Specifically, Anastasia argues that if the family court used her proposed income calculation, the allocation of the various child-related expenses would change significantly from the court-ordered 83% for Michael and 17% for her. Michael argues that the family court should have deviated from the guidelines because "their application would be unjust or inappropriate." *Clary v. Clary*, 54 S.W.3d 568, 570 (Ky. App. 2001).

However, as discussed at length above, the family court did not abuse its discretion when it calculated Michael's income. Despite the parties' arguments otherwise, the family court provided ample evidence to support its findings. As

---

[12] Importantly, in 2022, Kentucky's General Assembly amended KRS 403.212 and repealed and reenacted KRS 403.2121, by way of 2022 Kentucky Acts Ch. 122 § (HB 501) (eff. Jul. 14, 2022). Although these changes to the child support guidelines do not affect our analysis, it could affect a similar analysis in the future.

such, we find the family court did not abuse its discretion when it used its calculation of Michael's income to determine child support payments and this Court will not disturb the family court's rulings.

## IV.   CONCLUSION

The family court did not err when it dismissed Michael's CR 52.02 motion.  Additionally, the family court's determinations concerning maintenance and child support were not arbitrary, unreasonable, unfair, or unsupported by sound legal principles.  Therefore, the family court did not abuse its discretion and supported its findings with substantial evidence.  Based upon the foregoing, the Kenton Circuit Court is AFFIRMED.


ALL CONCUR.


BRIEF FOR ANASTASIA
STIEGELMEYER:

Michael J. McMain
Florence, Kentucky

BRIEF FOR MICHAEL
STIEGELMEYER:

William D. Tingley
Hillary A. Hunt
Ft. Mitchell, Kentucky