RENDERED:  JANUARY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0746-ME

ANTWON FRENCH                                   APPELLANT


                     APPEAL FROM FAYETTE FAMILY COURT
v.                      HONORABLE ROSS EWING, JUDGE
                          ACTION NO. 19-D-00628-005


CELIA MAE RUBIO                               APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, KAREM, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Antwon French, proceeding *pro se*, has appealed from the entry of a Domestic Violence Order (DVO) by the Fayette Family Court.  We affirm.

       Celia Mae Rubio filed a petition with the family court on May 9, 2023, seeking an order of protection against French.  She and French had been in a relationship in the past, and they had a child together, who was born in May 2019.

In the petition, Rubio stated that a weapon was involved, and she provided the

following factual background:

> I just found out today that my protection order has
> expired on 5/5/23.  I thought I had 30 day Grace period to
> renew.  I am asking for another one for myself and my
> Daughter [the child].  Antwon has shown zero effort in
> changing or getting help.  Antwon continues to harass me
> by calling the police doing well care check.  He has
> called the police saying my back yard was nasty.  When
> they came they found nothing.  Antwon has ended a few
> Green house 17 visits, causing my daughter to be very
> upset.  Antwon has called CPS on me twice recently
> saying I hit my daughter in her face and again saying she
> had blood in her panties.  I had to take my baby to UK
> hospital to get a Rape Kit done on her.
>
> I receive prank phone calls several times a day everyday
> except for Tuesdays.  Our Visit Day.  I have showed this
> to the police at my job.  The number is a fake app
> number.  I am afraid that this Harassment will turn into
> Violence once Antwon [realizes] the protection order is
> over.  I am afraid to leave my home.  I'm afraid to sleep.
> I'm afraid to be out of my daughter's [sight].  Antwon
> continues to bring in gifts or videos of the woman who
> helped him kidnap my daughter.  Antwon bought my
> daughter a toy she can sing with.  The next week I got a
> Phone Call from Green House 17 asking me Antwon
> wants to know why I haven't set up her toy yet.  I asked
> how would he even know if I did nor didn't.  They said I
> don't know he wants you to bring it back so he could set
> it up.  I said no.

Rubio sought an emergency protective order (EPO) to restrain French from

committing further acts of domestic violence and abuse, from any unauthorized

contact or communication with her, from going within 500 feet of her home or work, and from damaging or disposing of any of her property.

In an information sheet, Rubio indicated that French possessed one gun. She denied that he had ever tried to choke or strangle her, or force her to have sex or participate in sexual activities when she did not want to. Rubio did state that French had "repeatedly followed, called, watched, contacted or harassed you in ways that made you afraid or concerned for your safety or the safety of others (e.g., stalk you)[.]"

The family court entered an EPO/Summons the same day, and it scheduled a hearing for May 22, 2023. At that hearing, the court ordered that the summons be reissued for French for a hearing date on June 5, 2023. The second summons was served on French on May 23, 2023.

On June 1, 2023, French filed an "affidavit of truth" setting forth his version of the facts. In response to the allegations in Rubio's petition, French denied that he had ever harassed Rubio or the child or ever contacted Rubio from any telephone number, and he described issues with the child he encountered during their visits at GreenHouse17. He believed Rubio was paranoid, that she had engaged in parental alienation, and that her behavior was having an adverse effect on the child. He further believed that she made up the allegation that she felt threatened so that she could obtain another protective order.

The court held a hearing on June 5, 2023, at which it heard testimony from Rubio. Rubio testified that she met French through a dating app. They dated for a while, and she became pregnant with their child. French changed after she got pregnant. He became controlling about what she wore, what she ate, and what she watched on television, to the point that she did not want to be with him anymore. She let him know everything about her pregnancy but he would change her doctor's appointments. Rubio testified that French had threatened her multiple times. The first time she could recall, he threatened her at his house after she had taken a shower. She had put on her night clothes and had run out to the car to get her purse. He told her he would kill her if she ever ran outside like that again. He threatened her again after the birth of their child. She said he kidnapped the child when she was four days old and took the baby to California. In response, Rubio posted his photo on social media. He contacted her by telephone and told her that if she did not take the social media posts down, he would kill her and her children as he knew where she lived and where her older children went to school. She said he had not done anything in the last couple of days, but he constantly called social services and the sheriff to do welfare checks. He accused her of sexually abusing their daughter, who had to have a rape kit performed. The allegations were all false. French had visits with the child every Tuesday at GreenHouse17. She said something happened at every visit, and she described some of these visits and how

-4-

French would check the child's body. Rubio testified that she was afraid French was going to hurt her and possibly her children, and she was afraid he was going to take their child.

The court made oral findings at the conclusion of Rubio's testimony. It stated that based on the extensive history between these parties, the sworn testimony that day, and the record, the court was finding that domestic violence had occurred and may again occur. The court recognized that the prior DVO made Rubio and the child safer. The court also expressed some concerns about the visits French had with the child but declined to make any ruling on that issue. In the docket order, the court noted that French failed to appear despite having been served, and it specifically found that French had inflicted the fear of imminent injury to Rubio and/or the child. Immediately following the hearing, the family court entered a three-year DVO on behalf of Rubio and the child, restraining French from committing further acts or threats of abuse, from any unauthorized contact, from damaging any property, and from possessing a firearm.

On June 6, French filed a motion seeking findings of fact pursuant to Kentucky Rules of Civil Procedure (CR) 52.01, for a new trial pursuant to CR 62.01 or to alter, amend or vacate pursuant to CR 59, and to alter, amend, or vacate pursuant to CR 52.02. Rubio stated that he was under duress and had been told that the court date had been changed to June 15 "per sheriff's office statement."

The court scheduled another hearing for June 19, 2023, to address French's motions. Both parties were present at this court date, and the court indicated that it had reviewed all of the documents French filed. It also permitted French to provide any additional information at the hearing. French stated that he had been misled by the sheriff's department regarding the court date. The court questioned him about this, noting that French's June 1 document listed the correct court date of June 5. French stated that he called the day before the first court date and was told it had been changed to June 15. The court responded that French had been served and had filed a document containing the correct court date. The court stated that it struggled to believe that French had been misled as to the correct date and did not find his testimony to be credible. Even if it were the case that he had been told an incorrect date, that would not provide a basis to rehear the case under CR 59 or CR 60. Regarding the court's findings of fact, French was provided that day with a copy of the docket order that contained the written findings.

The family court denied French's motions in a docket order entered the same day, stating that French had not provided sufficient reasoning to rehear, amend, or vacate the DVO. The court memorialized its oral findings that it did not find French to be credible regarding his argument about the incorrect court date and that it had provided specific findings of fact on the record. This expedited appeal now follows.

On appeal, French contends that there is no factual basis for the DVO, that the family court abused its discretion in finding that domestic violence had occurred and might again occur, that the family court failed to issue written findings of fact, and that the family court was racially biased against him.[1]

Rubio has not filed a brief in this matter. Kentucky Rules of Appellate Procedure (RAP) 31(H)(3) provides:

> If the appellee's brief has not been filed within the time allowed, the court may: (a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

As this matter concerns the entry of a DVO, we decline to impose any penalty on Rubio for not filing a brief.

In *Johnston v. Johnston*, 639 S.W.3d 428, 431 (Ky. App. 2021), this Court set forth the applicable standard of review in DVO appeals:

> We review the entry of a DVO for whether the trial court's finding of domestic violence was an abuse of discretion. *McKinney v. McKinney*, 257 S.W.3d 130, 133 (Ky. App. 2008). Our review of the trial court's factual findings is limited to whether they were clearly erroneous. Kentucky Rules of Civil Procedure ("CR") 52.01; *Hall v. Smith*, 599 S.W.3d 451, 454 (Ky. App. 2020). A trial court's factual determination is not clearly

---

[1] French did not include the June 19, 2023, order in his notice of appeal, and none of his arguments on appeal address his claim in his motions to vacate that the sheriff's office had told him the wrong hearing date.

erroneous if it is supported by substantial evidence, which is evidence of sufficient probative value to induce conviction in the minds of reasonable people. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

The *Johnson* Court went on to explain the associated statutes and case law:

"A trial court is authorized to issue a DVO if it 'finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]'" *Castle v. Castle*, 567 S.W.3d 908, 915 (Ky. App. 2019) (quoting Kentucky Revised Statutes ("KRS") 403.740(1)). "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App. 2010) (citing *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007)). In *Caudill*, this Court addressed the DVO process and discussed the construction of DVO statutes:

While domestic violence statutes should be construed liberally in favor of protecting victims from domestic violence and preventing future acts of domestic violence[,] the construction cannot be unreasonable. Furthermore, we give much deference to a decision by the family court, but we cannot countenance actions that are arbitrary, capricious or unreasonable.

*Id*. at 115 (internal quotation marks and citations omitted).

*Johnston*, 639 S.W.3d at 431. And domestic violence and abuse is defined as:

"Physical injury, serious physical injury, stalking, sexual abuse, strangulation,

assault, or the infliction of fear of imminent physical injury, serious physical

injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]" KRS 403.720(2)(a).

We hold that the family court did not abuse its discretion in finding that French had inflicted the fear of imminent injury to Rubio and/or the child. The court based this decision on the extensive history between these parties, which included the birth of a child and a prior DVO, Rubio's sworn testimony that day, and the record. Rubio testified to the past violence with French and her current fears for herself and her children as the prior DVO had recently expired. We note that, although French did not appear at the hearing, the record also included French's "affidavit of truth," in which he disputed Rubio's claims. The family court reviewed this filing before reaching its decision, and it was well within its discretion to believe Rubio's testimony over French's version of the events. Therefore, we find no abuse of discretion in the entry of the DVO.

French's remaining arguments have no merit. The circuit court made sufficient, albeit brief, findings of fact in entering the DVO. And there is absolutely no evidence of racial bias in the family court's decision. French contends that the family court indicated that his race was Black on the DVO when he is an American Indian, which caused the court to rule in Rubio's favor. We note that Rubio listed his race as Black on the Protection Order Information Sheet;

we presume that the court merely completed the form with the information provided.

For the foregoing reasons, we affirm the entry of the DVO by the Fayette Family Court.

ALL CONCUR.


BRIEF FOR APPELLANT:

NO BRIEF FOR APPELLEE.

Antwon French, *pro se*
Lexington, Kentucky