RENDERED: OCTOBER 3, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0548-MR

SARAH KATHLEEN GRAFF (K/N/A
RILEY)                                                              APPELLANT


                          APPEAL FROM CAMPBELL FAMILY COURT
v.                        HONORABLE ABIGAIL E. VOELKER, JUDGE
                          ACTION NO. 19-CI-00820


JOHN GREGORY BOWMAN                                                  APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND McNEILL, JUDGES.

CALDWELL, JUDGE: Sarah Kathleen Graff (known now as Riley) ("Mother")

appeals from a Campbell Family Court order which requires that Mother exercise

her parenting time in Kentucky despite Mother's living elsewhere until a therapist

recommends that visits occur at Mother's home. She also appeals from the family

court's increasing Mother's child support obligation. We affirm.

# FACTS

Mother was married for several years to John Gregory Bowman ("Father"). Mother and Father had two children together during their marriage. The parties were divorced in early 2020. The divorce decree incorporated the parties' settlement agreement, which provided for joint custody of the children and equal timesharing with the parties to split expenses evenly and neither party to pay child support to the other. Both parties lived in the Northern Kentucky area at the time of the divorce.

Several months after the divorce, Mother filed a motion to modify timesharing, stating she planned to remarry and move out of state to wherever her fiancé would later be stationed. She requested that she be designated the primary residential parent for school purposes. Father objected to her request that the children relocate with her, asserting the children should continue to attend school in Fort Thomas, Kentucky.

The trial court entered an agreed order in early 2021, providing that the children would finish out the school year at Fort Thomas. Sometime that same year, Mother moved to Okinawa, Japan, where her new husband was stationed with the Marine Corps. The parties continued to litigate timesharing matters and a Friend of the Court ("FOC") was appointed.

Mother's request for the children to live with her in Japan in subsequent school years was not granted. However, the family court entered orders providing that Mother have frequent contact with the children via phone calls and in-person parenting time, especially during school breaks. Apparently, Mother's parenting time occurred in Kentucky for the first year or so after she moved to Japan due to COVID-era travel restrictions and passport requirements.

Father later objected to Mother's request that the children travel to Japan for Mother's summer 2022 parenting time. The family court ordered that Mother have two weeks' parenting time in the United States and three weeks' parenting time in Japan.

In July 2022, Mother filed a motion to set additional parenting time and for the children to visit her in Japan the next summer, asserting Father denied her any parenting time unless specifically ordered to do so. The FOC filed a report, noting the children had made some complaints about their time in Japan, including alleging their stepfather inappropriately disciplined the younger child by aggressively laying hands on the child.

Meanwhile, Father filed a motion for child support to be established under Kentucky statutory guidelines. He attached a supporting affidavit in which he asserted he was now the children's primary caregiver.

After a hearing on the parties' respective motions, the family court entered an order resolving the parties' motions regarding timesharing and child support in October 2022. The family court noted the parties had agreed to a deviation from the child support guidelines and for Mother to pay Father $400.00 of child support each month. The court set child support at $400.00 per month based on the parties' agreement, effective the date of Father's filing his motion.

The family court specifically addressed how Mother and Father must split parenting time during school breaks. The court also stated that it heard no evidence showing the children had been endangered by their time in Japan, that the children would be better acclimated to spending time there due to their previous visit, and that Mother was entitled to exercise the entirety of her five weeks' parenting time for the summer of 2023 in Okinawa. Without specifically finding whether Mother's new husband had inappropriately disciplined the younger child, the court directed that stepparents were not to discipline the children. Neither party appealed from the trial court's October 2022 order.

Shortly before the children's summer 2023 visit to Mother's home with her new husband in Okinawa, Mother gave birth to another child. The children traveled to Mother's home and spent five weeks there.

After the children returned from Japan, Father filed a verified motion asking the family court to modify its prior orders so that the children would not

have to travel to Japan for Mother's parenting time in the future. Father alleged the children said Mother had repeatedly bashed her own head into a table and/or wall and had screamed that the children did not listen to her and that she could not deal with them anymore. He also alleged that Mother and her new husband made verbally abusive comments to the children and confiscated the older child's cell phone and that Mother tore pages out of the older child's diary.

In addition to this motion to modify parenting time, Father also filed a motion to increase child support, requesting that the court set child support in accordance with the Kentucky child support guidelines. Shortly thereafter, Mother filed a motion to reduce her child support obligation. She asserted that despite her previously working as a certified teacher in Kentucky, teaching opportunities were limited in Japan, she was not able to earn as much money as a teacher there, and day care costs for her youngest child made it economically unadvisable for her to work at all.

Mother also filed a response objecting to Father's motion regarding her parenting time and requesting that the family court order counseling for her and the children. The FOC spoke with the children in August 2023 and again in January 2024 and filed a report about timesharing and counseling issues.

The family court held a hearing on the parties' motions in February 2024. The parties and the FOC testified at the hearing. The testimony indicated

Mother and the children (then ages nine and twelve) had not seen each other in person and had little to no phone contact since the summer 2023 visit to Okinawa. Mother also said she wished to improve her relationship with the children, so she asked the court to order that she and the children undergo counseling together.

After the hearing, the family court ordered that the children be immediately enrolled in therapy, that the first therapeutic session be scheduled for their spring break, and that Mother must attend that first session in-person with the children. (Although not clearly set forth in the family court's written orders, the family court orally discussed how it envisioned that Mother would participate in therapy remotely from Japan after the first session.) The family court also ordered that Mother be required to come to Kentucky for parenting time until a therapist recommended that visits occur at Mother's home. Once the therapist recommended that visits recommence at Mother's home, two of Mother's five weeks of summer parenting time were still required to take place in Kentucky according to the order. The court also ordered that Mother's child support obligation be increased to $539.12 per month.

Mother filed a motion to alter, amend, or vacate which the family court denied after a hearing. Next, Mother filed a timely appeal challenging the increased child support obligation and the timesharing modification decision.

Further facts will be provided as necessary in our analysis.

# ANALYSIS

First, we consider Mother's arguments about the family court's resolution of timesharing matters. She contends the family court unreasonably restricted her parenting time as a joint custodian when it required that her parenting time occur in Kentucky until a therapist recommends that visits occur at Mother's home. While she expresses gratitude that the court ordered therapy, she points out therapy had not commenced at the time of the hearing. And she asserts it is difficult to schedule virtual therapy sessions due to time differences and Father's not supporting counseling in her view. She contends, in her brief: "her parenting time should not rest on a recommendation from a therapist that has not even happened and will be a slow process."

Mother also asserts the family court failed to maximize her parenting time as KRS[1] 403.270(2) requires and the court should have awarded her more parenting time during the summer break. And she argues the decision to require that she travel to Kentucky for parenting time—away from her husband and baby and where she does not have a home—is unsupported by sound legal principles and results in a financial burden for her.[2]

---

[1] Kentucky Revised Statutes.

[2] Mother also complains in her briefs that the family court ordered that she come to Kentucky for the children's spring break rather than taking the children to Hawaii for spring break as she originally planned to do—despite there being no pending mention regarding spring break. However, Mother's attorney noted Mother had made travel arrangements to come to Kentucky

Despite her arguments, we discern no reversible error in the family court's modification of timesharing under the unique facts of this case.

**Standard of Review for Timesharing Modification Issues**

We review the family court's decisions regarding timesharing modification and counseling for abuse of discretion, though we review its factual findings for clear error and its interpretation and application of statutes *de novo*. *Turner v. Turner*, 672 S.W.3d 43, 50–51 (Ky. App. 2023).

"[M]odification of visitation or timesharing is governed by KRS 403.320, rather than the standard for an initial custody determination as set forth in KRS 403.270." *Layman v. Bohanon*, 599 S.W.3d 423, 431 (Ky. 2020). Thus, a court may modify a timesharing arrangement if it finds this to be in the children's best interests, although a court may not restrict timesharing (meaning order less

for spring break that year (2024) at the hearing on the motion to alter, amend or vacate. Moreover, despite Mother's attorney's objecting to the court's determining where Mother exercised her parenting time, the attorney stated the motion to alter, amend or vacate was withdrawn concerning where Mother would exercise her parenting time for spring break 2024. The family court also noted the motion was withdrawn concerning spring break in its order denying the motion to alter, amend, or vacate. In short, any issue about spring break 2024 is questionably preserved and now moot.

than reasonable timesharing) unless it finds that timesharing would seriously endanger the children.[3]  *Id*. (citing KRS 403.320(3)).[4]

### No Reversible Error in Modification of Timesharing

Despite Mother's argument that the family court unduly restricted her timesharing by requiring that it take place in Kentucky until a therapist recommends that parenting time resume at her home, the conditions imposed by the family court did not result in Mother's being unable to have any visits at all for any extended period.  *Cf. Turner*, 672 S.W.3d at 55 (vacating family court order denying joint custodian parent any parenting time for at least three months without explicitly finding serious endangerment).

Mother admitted in her testimony that she was physically and financially able to come to Kentucky at least occasionally by the time of the hearing.  She also admitted that she could often use her mother's home in Lexington for parenting time so she would not have to pay for a hotel.

---

[3] The family court's informal order issued the day of the hearing notes timesharing modification is decided under a best interest standard.  (Record on Appeal, "R," p. 320.)  Its formal written order resolving the issue also acknowledges parents are entitled to reasonable visitation or timesharing unless that would result in serious endangerment to the children.

[4] KRS 403.320(3) expressly refers to modification of visitation.  However, the terms *visitation* and *timesharing* are often used interchangeably.  *Layman*, 599 S.W.3d at 429.  *But see Pennington v. Marcum*, 266 S.W.3d 759, 764-65 (Ky. 2008) (recognizing that *visitation* is not the most accurate legal term for a joint custodian's time with his/her children, although the terms *visitation* and *timesharing* are often used interchangeably).  *See also* KRS 403.270(2); KRS 403.320(1).

Moreover, KRS 403.270(2) expressly provides that a court must establish a timesharing schedule **consistent with the children's welfare** in addition to requiring that the court maximize parenting time when deviating from equal timesharing for joint custodians. While Mother's desire to have more time with her children is understandable, our precedent recognizes that family courts have discretion to set appropriate limits on the exercise of timesharing in the best interest of the children—considering factors such as geographic distance, the children's ages, and evidence of mental health struggles and/or strained relationships. *See Turner*, 672 S.W.3d 55-57 (suggesting family court could properly condition joint custodian's exercise of parenting time on attending counseling, although family court could not totally deny parenting time for an extended period without a finding of serious endangerment); *Hudson v. Cole*, 463 S.W.3d 346 (Ky. 2015) (affirming family court's requiring that joint custodian travel from out of state to Kentucky to have parenting time with toddler, noting evidence it was difficult to travel with the toddler and concluding the court had not unreasonably restricted his parenting time despite not awarding as much parenting time as the out-of-state parent desired).

The family court stated it was not inclined to change the timesharing schedule (*i.e.*, when each party would have parenting time) though it modified prior timesharing provisions to require that Mother's parenting time occur in

Kentucky until a therapist recommended it occur at Mother's home. The family court's decision is supported by detailed findings about the children's reporting negative experiences in their last visit to Mother's home to the FOC and having a strained relationship with Mother.[5] The family court acknowledged that Mother disagreed with the children's description of events as recounted by the FOC, but the court did not find Mother's testimony to be credible. The family court also found the children would benefit greatly if their time with Mother occurred in Kentucky given the current state of their relationship—expressing hope that: "she can participate in therapy with them, be physically involved in their activities here, and demonstrate to them their value in her life."

Having carefully reviewed the record, we discern no abuse of discretion or misapplication of the law to the unique facts here. Moreover, as we are mindful of the family court's unique ability to determine witness credibility and to weigh the evidence, we cannot say its factual findings are clearly erroneous. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Thus, we affirm the family court's resolution of timesharing issues.

Next, we review the family court's modification of child support.

---

[5] Mother accurately points out that no mental health professional testified to the children suffering emotional harm from visiting Mother's home in Japan. Nonetheless, the family court's findings that the children reported negative experiences at Mother's home to the FOC and that Mother and the children had a strained relationship are supported by substantial evidence (including testimony from the parties and the FOC) and are thus not clearly erroneous. *See, e.g.*, Turner, 672 S.W.3d at 51.

## Standard of Review for Modifying Child Support

Noting that requirements for modifying child support are set forth by statute, this Court has recognized that resolving requests for modification of child support is "largely left, within the statutory parameters, to the sound discretion of the trial court." *Moskovitz v. Moskovitz*, 459 S.W.3d 886, 888 (Ky. App. 2015) (quoting *McKinney v. McKinney*, 257 S.W.3d 130, 133 (Ky. App. 2008)). Thus, we review the family court's resolution of the parties' motions for modification for abuse of discretion keeping in mind: "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Moskovitz*, 459 S.W.3d at 888 (quoting *Downing v. Downing*, 45 S.W.3d 449, 454 (Ky. App. 2001)).

## Family Court Did Not Abuse its Discretion in Modifying Child Support in Accordance with Statutory Requirements

The family court issued the following findings of fact regarding child support in its initial order resolving the parties' motions:

> 30. Father is currently self-employed. He does lawncare, snow removal, and coaches soccer. There was some testimony that he also flips houses, though there was no testimony that venture is currently happening. It is anticipated that Father's income from operating his business, along with coaching will be $75,361. However, this figure did not consider deductions he will receive for fuel, equipment, and other business costs. As such, this is not the actual amount Father will realize. Testimony seemed to indicate Father has earned less than $25,000 in recent years, though will have more this year.

-12-

An accurate figure appears to be approximately $35,000. This figure is based upon Father's success in his business, as well as his coaching income.

36. The Court finds Father's earning capacity is $35,000 per year, based upon the exhibits of prior income, as well as testimony showing his business has grown. The Court finds Mother is voluntarily underemployed by virtue of the fact she is working part-time as a substitute teacher, despite having the ability to earn income as a full-time teacher. However, the Court is also aware that opportunities in Okinawa may be fewer than in America and understands Mother has a child in Okinawa. For these reasons, the Court imputes the Mother the sum of $30,000 per year.

37. The Court incorporates the attached Child Support Worksheet, wherein Mother is responsible for child support in the sum of $539.12 per month. This is greater than a 15% change than the prior order.

(Pages 5-7 of Order resolving motions for modification of timesharing and child support.)

KRS 403.213(1) states that child support can be modified "only upon a showing of a material change in circumstances that is substantial and continuing." The family court reflected its awareness of this statutory standard for modifying child support in its docket notes entered the day of the hearing on the motion to modify child support, noting the standard for modifying child support was: "Change of circumstances."

The family court also specifically found that application of the guidelines would result in a more than 15 percent change in the amount of child

support due under the prior order (which set child support at $400.00 per month).

This means that a rebuttable presumption of a material change in circumstances

arose pursuant to KRS 403.213(2), which provides in pertinent part:

> Application of the Kentucky child support guidelines to
> the circumstances of the parties at the time of the filing of
> a motion or petition for modification of the child support
> order which results in equal to or greater than a fifteen
> percent (15%) change in the amount of support due per
> month shall be rebuttably presumed to be a material
> change in circumstances.

The rebuttable presumption set forth in KRS 403.213(2) applies even

where, as here, child support has been set upon the parties' prior agreement to

deviate from the guidelines. *Tilley v. Tilley*, 947 S.W.2d 63, 65-66 (Ky. App.

1997); *Nelson v. Ecklar*, 588 S.W.3d 872, 876 (Ky. App. 2019). Though the

parties may have previously agreed to a deviation from the child support

guidelines, Kentucky statutes clearly call for consideration of the guidelines in

resolving motions for modification. KRS 403.213(1);[6] KRS 403.211(2).[7] *See also*

*Ecklar*, 588 S.W.3d at 877 (citing *Tilley*, 947 S.W.2d at 65) (stating that not

---

[6] In addition to setting forth the standard for modifying child support, KRS 403.213(1) also states: "The Kentucky child support guidelines may be used by the parent, custodian, or agency substantially contributing to the support of the child as the basis for periodic updates of child support obligations[.]"

[7] KRS 403.211(2) provides: "the child support guidelines in KRS 403.212 or 403.2122 shall serve as a rebuttable presumption" for modifying child support, although courts may deviate from the guidelines if they make specific findings on the record indicating why application of the guidelines would be unjust or inappropriate.

applying the presumption set forth in KRS 403.213(2) to motions for modification where the parties had previously agreed to a deviation from the guidelines "would undermine the control family courts retain over child support, even when parties enter into agreements").

Because the family court found the application of the guidelines would call for an increase in more than 15 percent of the amount of child support due, Mother had the burden to rebut the presumption that a material change in circumstances had occurred. *See Ecklar*, 588 S.W.3d at 877 ("Because Ecklar [party seeking increase in child support] successfully proved a 15% change in the amount of child support owed, Nelson was then required to rebut the presumption that this change constituted a material change in circumstances.").[8]

However, the family court did not find that the presumption of a material change in circumstances had been rebutted and it accordingly ordered that Mother pay child support in the amount it calculated as due under the guidelines effective the date Father filed his motion.[9]

---

[8] We recognize both parties filed motions to modify child support here—with Father seeking an increase and Mother seeking a reduction in the child support obligation. Had the family court determined that applying the guidelines would result in a 15 percent or more **decrease** in the support obligation, Father would have had the burden of rebutting the presumption of a material change in circumstances to avoid a reduction of Mother's child support obligation.

[9] Though we are satisfied that the family court considered the modification requests under the proper legal standard, we would have preferred that the family court explicitly state in its findings of fact and conclusions of law that the KRS 403.213(2) rebuttable presumption had arisen, that the presumption had not been rebutted, and that a material change in circumstances

While Father argues the family court appropriately modified child support consistent with the guidelines, Mother contends the family court acted arbitrarily and abused its discretion by making findings about the parties' incomes which were not supported by evidence. She challenges the family court's finding that Father had income of $35,000.00 a year, asserting Father had taxable income of over $138,000.00 for tax year 2021 based on his tax return and failed to provide his 2022 or 2023 tax returns. She states that, according to a bank statement in evidence for May 2022, Father deposited $128,250.86 which he testified was from a house sale. She also notes Father testified to not having done his taxes yet for 2023 during the February 2024 hearing, but admitted to having income from coaching, snow removal, lawn care and rental income. She argues the family court should have imputed income to him averaging to over $9,000.00 per month over the past three years.

Based on our review of documentary evidence in the record, Mother is correct that Father's 2021 tax return shows taxable income of over $138,000.00,

---

which was substantial and continuing had been shown. Despite the lack of more explicit findings, however, the record shows the family court resolved the matter consistent with statutory requirements and there is evidence of record to support its factual findings and decision to modify child support. *Cf. Martin v. Cabinet for Health and Family Services*, 583 S.W.3d 12, 20 (Ky. App. 2019) (vacating order modifying child support as the family court failed to make a finding of a qualifying material change in circumstances pursuant to KRS 403.213(2) and there was no evidence to support such a finding, since the Cabinet had improperly filed an action to initially establish rather than modify child support and failed to allege or prove a material change in circumstances).

But Father's tax return for 2020 indicates he had total income of less than

$20,000.00.[10]

Mother generally contended the family court's finding that Father had

income of $35,000.00 per year was not consistent with the evidence and testimony

presented at trial in her motion to alter, amend or vacate. The family court denied

this motion, stating:

> Father testified he has increased his income through the
> business, but the gross figures on the tax returns did not
> include any deductions for operating costs. Based on the
> totality of the testimony, the Court increased Father's
> amount consistent with the testimony and imputed a
> decreased income to Mother.

(Page 1 of Order denying motion to alter, amend or vacate.)

Despite the 2021 tax return showing Father's taxable income to be

over $138,000.00, we cannot say the family court issued clearly erroneous factual

findings or abused its discretion in determining his income to be $35,000.00 per

year. This is especially true considering Father's tax returns in the record for other

recent years reflecting annual income of less than $20,000.00 and the family

court's noting Father's testimony that gross figures on tax returns did not reflect

---

[10] Father attached to his motion to increase child support at least a portion of his tax return for 2022, which claimed he had total income of less than $2,000.00. R, p. 274. However, it is unclear whether Father's 2022 tax return was formally admitted into evidence or considered by the family court. Mother's attorney asserted at the hearing that only the first couple of pages of Father's 2022 tax return had been attached to his motion to increase child support and suggested this did not reflect the totality of Father's income.

-17-

deductions for operating costs. Still, the family court found Father's annual income to be $35,000.00—nearly double the income reported in some of his tax returns admitted into evidence.

In contrast, despite evidence that Mother had previously earned over $50,000.00 per year as a teacher in Kentucky, the family court imputed to her a significantly reduced amount of annual income of $30,000.00. (Mother had requested that the family court only impute to her $15,000.00 in annual income.)

Mother challenges the family court's imputing income to her of $30,000.00 per year in addition to challenging the family court's finding Father's income to be $35,000.00 a year. She admits the family court found her voluntarily under-employed as a part-time substitute teacher who had previously worked as a certified teacher earning over $50,000.00 a year in Kentucky. She suggests the family court randomly selected income numbers for the parties which do not reflect the evidence.

Mother points to her testimony that she did not have the same opportunities for full-time teaching in Japan as she had in Kentucky. She also points to the fact that she had an infant. She asserts she had an average annual income of less than $10,000.00 based on her W-2s for 2021, 2022, and 2023.

Mother asserts the family court arbitrarily determined an amount of child support that was not supported by substantial evidence. While she does not

-18-

clearly challenge the family court's finding that Mother was voluntarily under-employed, Mother suggests in her brief that the family court failed to properly determine her imputed income based on her "most recent work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community." To the extent she suggests the family court could not consider the salary she earned in Kentucky prior to her moving to Japan as too far back in time, we disagree.

In *McKinney*, we quoted the version of KRS 403.212(2)(d) then in effect regarding what a court must consider in imputing income for a party found to be voluntarily underemployed. However, unlike the present case, the family court in *McKinney* did not make a finding that the obligor parent was voluntarily underemployed. 257 S.W.3d at 134.

Since *McKinney* was rendered, KRS 403.212 has been amended multiple times. The version of KRS 403.212 in effect during the late 2023-early 2024 modification proceedings before the family court sets forth factors for consideration in imputing income for a party found to be voluntarily under-employed in subsection (3) as follows:

> (e) 1. If there is a finding that a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, except that a finding of voluntary unemployment or underemployment and a determination of potential income shall not be made for a parent who is

incarcerated, physically or mentally incapacitated, or is caring for a very young child, age three (3) or younger, for whom the parents owe a joint legal responsibility;

2. A court may find a parent is voluntarily unemployed or underemployed without finding that the parent intended to avoid or reduce the child support obligation; and

3. Imputation of potential income, when applicable, shall include consideration of the following circumstances of the parents, to the extent known:

a. Assets and residence;

b. Employment, earning history, and job skills;

c. Educational level, literacy, age, health, and criminal record that could impair the ability to gain or continue employment;

d. Record of seeking work;

e. Local labor market, including availability of employment for which the parent may be qualified and employable;

f. Prevailing earnings in the local labor market; and

g. Other relevant background factors, including employment barriers[.]

KRS 403.212 (effective July 14, 2022, through July 14, 2024).

This applicable version of KRS 403.212 notably does not require that the family court confine its consideration of the obligor's earnings to only the obligor's most recent work history, but instead generally calls for considering one's employment and earning history along with other relevant factors.

More importantly, the family court set forth findings in its orders discussing several appropriate factors for imputing income pursuant to KRS 403.212—including Mother's education and job skills, the opportunities available in the community in which she lived, Mother's having an infant,[11] and Mother's having voluntarily decided to move to Japan.

While the family court declined to impute income of only $15,000.00 annually to Mother as Mother requested, the family court also declined to impute income of over $50,000.00 based on Mother's prior earnings as a teacher in Kentucky as Father requested. Although no one piece of evidence or mathematical formula specifically established that Mother had a potential income of $30,000.00 per year or that Father's annual income was $35,000.00, the family court had the prerogative to weigh conflicting evidence and to determine the credibility of witnesses. *Asente*, 110 S.W.3d at 354.

Mindful of the family court's unique ability to determine witness credibility[12] and to weigh the evidence, we cannot say its factual findings are

---

[11] Mother does not argue that no income should have been imputed to her due to her having a baby and the family court certainly was not forbidden from imputing income due to Mother's having a baby with her new husband after the parties' divorce because the parties did not share responsibility for her new baby. *See* KRS 403.212(3)(e)1. While the family court was not precluded from imputing income due to Mother's having a new baby, the family court indicated it reduced the amount of imputed income in part due to Mother's having an infant. *See* KRS 403.213(3)(e)3.g.

[12] The family court found Father's testimony to be credible—at least regarding one non-financial matter. *See* Finding of Fact 29 on page 5 of the order modifying timesharing and child support,

-21-

clearly erroneous. Nor do we discern any abuse of discretion in the family court's imputing $30,000.00 annual income to Mother especially since the family court appropriately considered factors identified in the applicable version of KRS 403.212. Thus, we discern no reversible error in the family court's determination of imputed income.

In short, we discern no reversible error in the family court's modification of child support. Further arguments raised in the briefs which are not discussed herein have been determined to lack merit or relevancy to our resolving this appeal.[13]

which states: "Father told the Court he wants the children to have a relationship with Mother, but struggles forcing them when the [sic] do not want to speak to her or go visit her. The Court finds Father's testimony credible."

[13] Despite some problems in both parties' briefs, we discern no substantial failure to comply with appellate briefing rules which affects our resolution of this case. However, we urge the parties' counsel to carefully review the Rules of Appellate Procedure regarding such matters as citation to unpublished cases, preservation statements, citations to the record and to legal authority, and requirements for appendices to appellate briefs. The Rules of Appellate Procedure may be reviewed on our court website, along with other resources including appellate briefing checklists and a basic appellate handbook. https://www.kycourts.gov/Courts/Court-of-Appeals/Pages/default.aspx (last accessed Sep. 9, 2025).

## CONCLUSION

For the foregoing reasons, the judgment of the Campbell Family

Court is **AFFIRMED**.


ALL CONCUR.


BRIEFS FOR APPELLANT:              BRIEF FOR APPELLEE:

Brenda L. Bonecutter                 James W. Morgan, Jr.
Newport, Kentucky                    Covington, Kentucky